92 So.2d 115 (1957)
Mozella Trahan CROSBY
v.
BROWN OIL TOOLS, Inc. and Rex Fagan.
No. 4338.
Court of Appeal of Louisiana, First Circuit.
January 2, 1957.
*116 Guzzetta & LeBlanc, Thibodaux, for appellant.
A. Deutsche O'Neal, Houma, for appellees.
ELLIS, Judge.
On November 3, 1953, between 5:30 and 6:00 P.M. the defendant Fagan, an employee of and on duty with the defendant Brown Oil Tools, Inc., was driving north along the highway which parallels Bayou Lafourche, and when approximately two miles south of the town of Golden Meadow, La., he struck and killed Adam Crosby, husband of the plaintiff. Mrs. Crosby filed this suit individually and as natural tutrix of her minor children, and after trial of the case her suit was dismissed, and the matter is now on appeal to this court.
While there was some dispute as to whether it was dark at the time of the accident, the preponderance of the evidence, as well as the finding of fact by the Trial Judge, is conclusive that this accident occurred shortly after dark at or near 6:00 P.M. Defendant Fagan, who was accompanied by one Baxter, a fellow employee, was driving north on what is known as the Bayou Lafourche highway at an admitted speed of about 40 to 45 miles per hour at the time of the accident.[1] Fagan testified that one car was proceeding in front of him and one car was approaching him in the southbound traffic lane, and that just as the southbound car passed him, "that's when the object appeared in front of me." He testified as follows:
"Q. Will you please state how far the pedestrian was from you when he came within the range of your dim lights? A. It is hard to say how far he was from me. I only had a blur of something moving in front of me. I was right on him. I put on my brakes. It looked like the object moved back in front of me. It appeared just in front of me. He caught my right headlight. It was just a short distance in front of me when I first detected an object that moved.
"Q. Was he going from your left to your right when you first saw him? A. I only got a glimpse of something, just a blur like, through my right headlight. It looked like it just waved. I throwed on the brakes. I couldn't tell what it was. All of a sudden, I had an impact."
It is shown that a dragline had been placed on the east or Bayou Lafourche *117 side of this highway with the boom facing south within approximately two feet of the paved portion of the highway, and that the decedent and plaintiff, as well as other witnesses who testified on behalf of the plaintiff, noticed a fire in the cab to the rear of the dragline, and that the decedent got a small tub, dipped up some water from a ditch on the west side of the highway, went across the highway and threw or was attempting to throw the water on the fire at the time he was struck. The deceased had at least one foot on the pavement, according to the testimony, at the time he was struck and at the time he made the attempt, or in fact did throw the water.
The plaintiff and her witnesses who were present at the time the deceased was struck never saw any car traveling north nor south prior to the time the Fagan car actually struck the deceased, however, they did not even notice the Fagan car, according to their testimony, until the impact. The trial court has favored us with written reasons and with regard to plaintiff and her witnesses made the following comment:
"We believe that the preponderance of evidence is convincing that this accident happened after sunset on a very dark night. Trooper Folse places the accident after dark, at '5:55' and says `It was just one of these unusually dark nights, no moonlight or anything at that time of day.'
"Fagan was using the headlights of his car. Mr. Vaughn R. Baxter knew that Fagan was using his headlights, because the left one was still burning after the accident, the right one having been knocked out by the accident. Mr. Flahan Finch was also using headlights on his automobile at the same time.
"Plaintiff claims that it was daylight, and that headlights were not needed, and that they were not being used.
"The plaintiff and all of her witnesses also testified that defendant Fagan was driving 80 miles an hour. These same witnesses all stated that Fagan skidded exactly the same distance. They all agreed exactly on the actions, of decedent Crosby. Though all of plaintiff's witnesses placed Fagan's speed at 80 miles an hour, not one of these witnesses saw the Fagan automobile until it actually struck the decedent. On the other hand, there is the positive evidence of three witnesses that Fagan was driving not in excess of 45 miles an hour. This was the testimony of Mr. Fagan and of Mr. Baxter and of Mr. Finch.
"We believe the testimony of Mr. Fagan, of Mr. Baxter, and of Mr. Finch and who all state that a car met the Fagan automobile immediately prior to the accident. The plaintiff's witnesses deny that there was any other traffic in the highway whatsoever except the Fagan automobile, and they did not even see this automobile until it actually struck Crosby.
"We have compared and analyzed this testimony and have reached a conclusion that Mr. Crosby, his family and friends, were not paying any attention whatsoever to anything except the dragline on fire across the paved highway from their home. Whether it was daylight or at night, there was nothing to prevent decedent or the plaintiff or her witnesses from seeing the Fagan automobile and other traffic at the time of this accident. If it was daylight and one could see for a half mile or more, as testified by plaintiff and her witnesses, then the Fagan automobile and the other traffic could have been seen. The fact is that these people had their attention concentrated on the dragline fire."
We agree with the learned District Judge and believe as he did that the *118 deceased, as soon as the north and southbound traffic had passed him, entered the highway with his tub of water and crossed to the east edge and was still partially on the paved portion of the highways at the time he was struck by the Fagan automobile. It is clear that he was grossly negligent and that the judgment of the District Court is correct unless counsel for plaintiff's contention is well founded, that the decedent's failure to see the Fagan automobile "would be excusable under the well established rule of law which prevails in Louisiana called the rule of `momentary forgetfulness.'" Counsel cites Gustine v. Big Chain Stores, La.App., 180 So. 852, and Black v. American Mutual Liability Insurance Company, La.App., 37 So.2d 63. In the Big Chain Stores case, supra, plaintiff sustained injuries when she fell preparing to enter her automobile stationed on the concrete parking lot. The fall was occasioned by plaintiff stepping and slipping on a raised concrete section having a rough or uneven border. Plaintiff was familiar with the defect but in that case the doctrine of "momentary forgetfulness" was urged. The Court in discussing this doctrine stated [180 So. 854]:
"In 45 Corpus Juris, verbo, Negligence, § 509, we find: `Momentary forgetfulness of, or inattention to, a known danger may, and usually does, amount to negligence. When a person has exercised the care and caution which an ordinarily prudent person would have exercised under the same or similar circumstances, he is not negligent merely because he temporarily forgot or was inattentive to a known danger. To forget is not negligence unless it amounts to a failure to exercise ordinary care for one's safety. Regard must be had to the exigencies of the situationthe circumstances of the particular occasion. Circumstances may exist under which forgetfulness or inattention to a known danger may be consistent with the exercise of ordinary care, as where the situation requires one to give undivided attention to other matters, or is such as to produce hurry or confusion, or where conditions arise suddenly which are calculated to divert one's attention momentarily from the danger. To excuse forgetfulness of, or inattention to, a known danger, some fact, condition, or circumstance must exist which would divert the mind or attention of an ordinarily prudent person; mere lapse of memory is not sufficient, and if, under the same or similar circumstances, an ordinarily prudent person would not have forgotten or have been inattentive to the danger, such conduct constitutes negligence.'
"Also relevant to the matter under consideration is the following extract taken from 20 R.C.L., verbo, Negligence, § 96: `The plaintiff's knowledge of the peril is to be established like any other fact, and ordinarily is for the jury's determination. The most convincing proof, perhaps, consists in evidence showing that he was warned of the danger; but in a great majority of cases knowledge must rest in the imputation arising from the fact that the peril was patent or obvious, or the fact that the plaintiff was familiar with the offending place or appliance. He is held to have had knowledge of all such perils as were obvious, or discoverable by reasonable observation and the use of the senses, provided the circumstances were such as to fix knowledge in his mind, and not to justify forgetfulness. While as a rule a failure to avoid a known peril is in no wise excused by the fact that the plaintiff "did not think" or "forgot", yet there are exceptions; where the plaintiff was confronted by an emergency, or acted to save life or property, or had his attention diverted. For example, it is true as a general rule, that where a pedestrian, while proceeding along the *119 sidewalk of a municipality sustains an injury by reason of a defect or obstruction which he might have observed if he had looked, the fact that his attention was diverted from the surface of the street at the moment when he encountered the defect does not establish negligence on his part as a matter of law. Whether he was negligent is in such case a question for the jury. But the conclusion has been reached by the authorities that momentary forgetfulness of a danger, which forgetfulness is not induced by some sudden and adequate disturbing cause, is itself as matter of law, contributory negligence barring a recovery.'"
The plaintiff argues that the small fire, which could not be and was not seen by Fagan nor his guest passenger until after the accident had occurred, might have caused the fuel tank on the dragline to blow up and destroy decedent's house which was located some 200 feet from the dragline across the highway, and that, therefore, the decedent was confronted with an emergency of a "sudden and adequate disturbing cause" and he should therefore be excused under the doctrine pleaded. We do not believe that plaintiff's contention is well founded. It is clear that the decedent did not see or know that the Fagan automobile was approaching. He did not look, for he would not have dared place himself in the path of certain death. He did not exercise any care and caution, much less that of an ordinary, prudent person, which is required under the doctrine. The small fire and the most remote possibility of his house being damaged as a result of the fire on the dragline was not such a situation as to require the undivided attention of the decedent or to produce hurry or confusion, nor of such a nature as to be calculated to divert the decedent's attention from the danger of north and southbound traffic on this heavily travelled highway. No fact, condition or circumstance existed which would have diverted the mind or attention of an ordinary, prudent person, and under the same or similar circumstances, an ordinary, prudent person would not have forgotten or been inattentive to the danger of traffic and in particular to the Fagan automobile. The above remarks are based upon the knowledge of the danger by the deceased, however, it is to be seen from the above quotation that the decedent in this case is chargeable with all such perils as were obvious or discoverable by reasonable observation and the use of the senses, provided the circumstances were such as to fix knowledge in his mind, and not to justify forgetfulness.
Therefore, decedent is charged with the knowledge that at the time he started across the highway that the Fagan automobile was much too close for him to attempt to cross the highway, and there would be no justification for forgetfulness of such a fact. If the doctrine applies in a case such as the one under consideration, it can offer no comfort to the plaintiff under the specific facts of this case when compared with the necessary facts and circumstances which must exist for the doctrine to be successfully applied.
Plaintiff's next contention is that Fagan had the last clear chance to avoid the accident. Rottman v. Beverly, 183 La. 947, 951, 165 So. 153; Jackson v. Cook, 189 La. 860, 181 So. 195. Under this doctrine the driver of an automobile must or should have seen and is, therefore, chargeable with seeing, a pedestrian in position of peril, and at that moment to have had sufficient time to avoid striking him. While we have carefully considered counsel's brief in which he states that in the case of Loewenberg v. Fidelity Union Casualty Company, La.App., 147 So. 81, the Court fixed the rate of speed at which a pedestrian normally walks at four miles per hour, and using this rate, if Fagan was traveling 40 miles per hour he was traveling ten times as fast as decedent and, therefore, when the latter started across the highway the Fagan car was more than *120 180 feet from the point of impact, since it was traveling ten times as fast as the decedent and had to travel ten times the distance which the decedent travelled, viz., ten times 18 feet (the width of the pavement) or 180 feet, to reach the point of impact.
If these facts were proven or we could assume such facts, the arithmetic would be unanswerable, however, in this case the District Court found, and we think correctly, that there was a car traveling north in front of Fagan and one approaching him, traveling south, and that the decedent no doubt started out across this highway as soon as this traffic passed in front of him. Until the southbound car reached and passed Fagan, he did not and could not see the decedent. As soon as the car passed him he states that he saw the "blur" of an object moving in his line of travel, and he immediately applied the brakes. When he said "immediately applied the brakes" this includes the reaction time which, at 40 or 45 miles per hour, would be from 59 to 65 feet, and in view of the fact that the brake marks started at the point of impact, according to the state trooper, and at or near the cab or rear portion of the dragline where the decedent was attempting to throw water on the fire, according to other testimony, then it is clear that Fagan, when he should or could have discovered decedent's peril, was much too close to avoid striking him. Fagan did not have the last clear chance to avoid this accident and this doctrine, under the facts in this case, is not applicable. The sole and proximate cause of this accident was the gross negligence of the deceased.
Plaintiff also contends in connection with the plea of last clear chance that Fagan was in error when he testified that his right front wheel was approximately on the center line of the highway at the moment of the impact. Plaintiff is correct in this contention, however, as the decedent was struck when he had at least one foot on the pavement throwing the water, within eight to ten inches of the east edge. Plaintiff argues, therefore, that Fagan could have swerved to the left and completely missed the decedent. Fagan did pull to the left according to the skid marks, and here again enters the reaction time. Fagan was confronted with a sudden emergency and he applied his brakes and steered his car to the left as quickly as the acts could have been done by an ordinary normal driver according to the "Approximate Speed and Stopping Chart" contained in Blashfield's Cyclopedia of Automobile Law and Practice, Section 6237, p. 413, Volume 9C.
For the above and foregoing reasons the judgment of the District Court is hereby affirmed.
NOTES
[1] This admission is by counsel for plaintiff in his brief, however, plaintiff and her witnesses testified that the car was traveling 80 miles an hour although they admitted they did not see the fatal car before the impact.