191 So.2d 885 (1966)
Mrs. Eula NAQUIN, Individually and as Tutrix of the minors Joan Ann LeBoeuf, Kirt Paul LeBoeuf and Steve Joseph LeBoeuf
v.
Donald Ray CALLAIS, a Minor and Harris M. Callais, Individually and as Parent and Guardian of the minor Donald Ray Callais, and Fireman's Fund Insurance Company.
No. 6768.
Court of Appeal of Louisiana, First Circuit.
November 15, 1966.
*887 Leonard A. Calcagno, New Orleans, George C. Ehmig, Metairie, for appellant.
Kermit Watkins, of Watkins & Watkins, Houma, for appellees.
Before LOTTINGER, REID and SARTAIN, JJ.
LOTTINGER, Judge.
This is an action in tort arising out of an automobile-pedestrian accident on Louisiana Highway No. 1, about two miles north of Golden Meadow, Louisiana, wherein the pedestrian, Alvin LeBoeuf, age 31 years, was killed. Suit was instituted by the decedent's widow, Mrs. Eula Naquin LeBoeuf, individually and as tutrix of the minors, Joan Ann LeBoeuf, Kirt Paul LeBoeuf and Steve Joseph LeBoeuf, all children of Alvin and Eula LeBoeuf, against Donald Ray Callais, a minor, and Harris M. Callais, individually and as parent and guardian, and Fireman's Fund Insurance Company, the liability insurer of defendant's car.
The record shows that on August 6, 1961, a Sunday, at approximately 11:30 o'clock in the morning, Donald Ray Callais, 16 year of age, was driving his father's automobile, at approximately 45 to 50 miles per hour, north on Louisiana Highway No. 1, which is the highway paralleling Bayou Lafourche on its western bank. The posted speed limit was 45 miles per hour. It was not raining at this particular time, but the concrete pavement of the highway was still wet from an earlier rain.
Callais was proceeding in his proper lane of travel, when upon approaching the intersection of Louisiana Highway No. 1 and Serginy Lane, he observed the decedent, Alvin LeBoeuf, proceeding across the highway in an easterly direction. The decedent was in the western or south bound lane of travel and near the center line of the highway when Callais first observed him. Callais immediately applied his brakes, but could not avoid striking the decedent, killing him instantly and throwing his body a distance of from 80 to 90 feet farther north than the point of impact. The automobile came to a stop approximately 140 to 150 feet farther north than the point of impact, off the highway on the apron of a service station. There were no skid marks either prior or subsequent to the impact.
The probable point of impact as established by the evidence was approximately *888 one foot east of the center line of the highway, and in the northern lane of Serginy Lane as the boundary lines of Serginy Lane would cross the highway. This, then, would put the point of impact in the defendant's lane of travel.
At the probable point of impact, Louisiana Highway No. 1 was 19.2 feet wide. On the eastern or bayou side of the highway, there is an eight foot shoulder, and a business establishment. There is a twenty-eight foot shoulder on the western side where Serginy Lane and the highway intersect. Farther north from the intersection of the highway and lane, there is a service station and restaurant which are both housed in one building. At the time of the accident, there were people working on the eastern or bayou side of the highway near the probable point of impact.
Defendants filed answer admitting that a policy of insurance had been issued by Fireman's Fund Insurance Company, denying any negligence on the part of defendants, and pleading contributory negligence on the part of the deceased.
The Lower Court ruled in favor of defendants, rejecting the demands of plaintiff in their entirety. Plaintiffs have appealed.
Plaintiff alleges that the driver was negligent in that the automobile was being operated at a speed in excess of the legal speed limit, and that the operator of the automobile did not see the deceased when he should have seen him. There is no doubt but that young Callais was exceeding the lawful speed limit when the accident occurred, because the investigating State Trooper testified that the driver told him that he was traveling at a speed of between 45 and 50 miles per hour. This young Callais admitted on the witness stand.
This particular stretch of highway was straight and the view of an automobile driver was unobstructed for at least one-half mile prior to the point of impact. The driver of the automobile testified that he did not see the decedent until he was right upon him, and as soon as he saw him, he applied his brakes. The driver of the automobile further testified that he did not even see the decedent standing on the side of the highway.
The Trial Judge held that the driver was negligent in operating his vehicle at a speed in excess of the speed limit, and with this we agree. But, the Trial Judge also held that the driver was negligent in failing to see the decedent until he was immediately upon him, and with this decision we feel we cannot agree. Appellant strongly contends that the driver was too busy observing what was happening on the bayou side and thus did not observe the deceased. It is true that the driver was watching carefully the activities of the individuals working on the bayou side, near the eastern lane of travel. Here were people, working near the highway, who could have without notice stepped out into the driver's lane of travel. The deceased was on the opposite side of the highway, and was in a position of absolute safety as far as the driver of the automobile could be concerned. It is true that the driver of an automobile has a duty to observe pedestrians along each side of the highway, but it is our feeling that there is a greater and more commanding duty on the part of the driver of an automobile to place particularly close attention to individuals engaged in activity in close proximity to his lane of travel. This young Callais was doing, and in so doing, he failed to observe the decedent until he was nearly upon him, for which failure we feel he cannot be found negligent.
The defendant in answer to plaintiff's petition specifically alleges contributory negligence on the part of the decedent. It was shown through the testimony of several witnesses that upon reaching the highway, the decedent stopped for anywhere *889 from four to six minutes and observed the traffic which was on the highway. The decedent then proceeded to walk across the highway at a rather fast pace. It must be presumed that since the decedent stopped at the edge of the highway, he either saw the defendant's automobile or he should have seen the defendant's automobile. It is well settled that one who looks and does not see what he should see is the same as not looking at all, and it is most obvious that one who crosses the highway whereon there is traffic, and does not look before he crosses, is negligent in crossing in such a manner. We held in Crosby v. Brown Oil Tools, La. App. 1 Cir., 92 So.2d 115, that it was grossly negligent for one to cross the highway parallel to Bayou Lafourche at a time when it was unsafe to do so. The Lower Court found that the decedent, Mr. LeBoeuf, was negligent in his attempt to cross the road at a time when it was unsafe, with which we agree.
Plaintiff further contends that young Callais had the last clear chance to avoid the accident. Under the doctrine of Last Clear Chance, we held in Crosby v. Brown Oil Tools, supra, 119, that "the driver of an automobile must or should have seen and is, therefore, chargeable with seeing, a pedestrian in position of peril, and at that moment to have sufficient time to avoid striking him." The driver of the automobile had clear vision for one-half mile prior to the point of impact, and therefore should have seen the decedent, but there are other prerequisites to the doctrine of Last Clear Chance which must be met before the plaintiff can win his case under that doctrine. In Accardo v. Grain Dealers Mutual Insurance Company, La.App. 1 Cir., 151 So.2d 116, 121, we set out the following rules as to the doctrine of Last Clear Chance:
"It is the settled jurisprudence of this state that for the doctrine of last clear chance to apply, plaintiff bears the burden of establishing the following factors by a clear preponderance of evidence, namely: (1) that plaintiff was in a position of peril of which he was unaware or from which he was unable to extricate himself; (2) that defendant was in a position to discover plaintiff's peril; and (3) that when defendant discovered plaintiff's peril he had a reasonable opportunity to avoid the accident. McCallum v. Adkerson, La.App., 126 So.2d 835; Whitner v. Scott, La.App., 116 So.2d 180."
The driver of an automobile has the right to assume that a pedestrian will exercise reasonable care for his own protection and will not leave a position of safety and proceed into the path of an oncoming vehicle. Soileau v. New Hampshire Insurance Company, La.App. 3 Cir., 160 So.2d 793; Duke v. Tarter, La.App. 3 Cir., 168 So.2d 442; Russ v. Indiana Lumbermen's Mutual Insurance Company, La.App. 4 Cir., 170 So.2d 171 (Writ Refused). We recognize the fact, as the Court has seen it happen, that a pedestrian will proceed across a street or highway, but stop prior to crossing the center line so that oncoming traffic might pass him by.
In applying the above referred to rules applicable to the doctrine of Last Clear Chance as set out in Accardo v. Grain Dealers Mutual Insurance Company, supra, the facts and the evidence support the finding that the plaintiff has failed, in his contention of the applicability of the Last Clear Chance doctrine, to fulfill the requirement of the first rule in that decedent was in a position of peril of which he was unaware or from which he was unable to extricate himself. The decedent was certainly aware of the peril, for he remained on the western shoulder of the highway for a period of from four to six minutes waiting for the traffic to ease up so that he could cross. Obviously, the decedent did not observe the defendant's car, and is therefore legally responsible for not seeing, for our courts have many *890 times stated that the one who looks and does not see what he should have seen is the same as not looking at all.
As to the second and third applications of the doctrine of Last Clear Chance as set out above, we feel that the evidence most clearly places the driver of the automobile in a position to have discovered the decedent's peril. Nowhere in the record is there found any testimony as to any obstructions to the driver's view of the highway, and therefore this places the driver of the automobile in a position whereby he should have seen, and the law presumes, that he did see the deceased walk out onto the highway and across the center line of the highway and into the path of his automobile. But, as we have above stated, the driver of the automobile had the right to assume that the deceased would not leave the position of safety and thusly cross the center line of the highway into his path. No evidence was introduced as to how long it would have taken the deceased to go from the western shoulder of the highway to the point of impact, but we must agree with the Trial Judge in his conclusion that it would have taken a very short period of time. Since it would have taken a very short period of time for the deceased to go from the western shoulder of the highway to the point of impact, it would have taken an even shorter period of time to move from a position of safety, where the deceased was first observed by the driver, to the point of impact. The issue then is whether the driver of the automobile upon first discovering that the decedent was about to cross the center line of the highway would have had sufficient or reasonable opportunity to avoid the accident.
It must be remembered that the probable point of impact as established by the evidence has been placed at one foot east of the center line of the highway. If the driver of the automobile would have been traveling 45 miles per hour, which was the posted speed limit at this particular point on the highway, his automobile would have been traveling at a rate of 66 feet per second. Considering the fact that it would have taken the decedent a very short period of time to leave a position of safety on the western side of the center line of the highway and to arrive at the point of impact, which period of time we feel could have been no more than one second, at the time that the deceased proceeded to the point of impact, or which was the beginning of the second, the automobile was also one second away from the point of impact, which as the automobile would have been traveling 45 miles per hour, would have placed the automobile 66 feet away from the point of impact. Similarly stated, this would mean that at the time the deceased left or began to leave his position of safety, the automobile was 66 feet away from the point of impact. The "braking chart" found at Am.Jur.2d Desk Book, Document No. 174, being used only as an indication of what the braking distance would be, points out that an automobile traveling approximately 45 miles per hour on wet pavement could come to a complete stop in a distance of 163 feet after the driver has seen the danger. Therefore, since the braking distance is more than double the distance from the automobile, when the driver would have first discovered the decedent's peril, to the point of impact, we feel that the plaintiff has failed to prove the third rule of the doctrine of Last Clear Chance, in that the driver of the automobile would have had reasonable opportunity to avoid the accident.
The Supreme Court held in Bergeron v. Department of Highways, 221 La. 595, 60 So.2d 4, 8, that "[t]he rule of `last clear chance' or `discovered peril' applies to both parties who are involved in an accident. In 38 Am.Jur. Negligence, Sec. 227, that thought is expressed as follows: `As graphically stated by some authorities, the doctrine of discovered peril is a two-edged sword, applicable equally to the rights of a defendant and those of a *891 plaintiff.'" We feel that it was the decedent who had the Last Clear Chance in which to avoid the accident, for his only attention was to that of the approaching traffic, and not to workmen near the highway.
Accordingly, the judgment of the Trial Court is affirmed at plaintiff-appellant's cost.
Judgment affirmed.