YARRUT, Judge.
Plaintiff sued to recover $5,000.00 for personal injuries and mental anguish suffered in an intersectional collision between an automobile, owned and driven by her husband (Samuel J. Williams), and one owned and driven by Natal J. Lafauci, while she was a passenger in her husband’s car with their three children.
Plaintiff joined as Defendants the Allstate Insurance Company, her husband’s liability insurer, and Lafauci, seeking a solidary judgment, charging both her husband and Lafauci with joint and concurrent negligence.
Allstate filed a general denial and a third-party action against Lafauci. Lafauci filed a general denial and, alternatively, alleged contributory negligence on the part of Samuel J. Williams.
The district court rendered judgment for Plaintiff only against Defendant Allstate (for $2,500.00) and dismissed both Plaintiff’s suit and Allstate’s third-party action against Lafauci.
Allstate appealed for reversal of the judgment against it; or for a reduction in *44 the award; and for a reversal of the judgment dismissing its third-party action against Lafauci.
Plaintiff appealed for a reversal of the judgment dismissing her suit against La-fauci, and for an increase in her award against Allstate.
. The district judge in his reasons for judgment, inter alia, held:
“Insofar as the liability of the defendant, Lafauci is concerned there is no evidence of negligence, except that an accident occurred and the point of impact was not on the rear of the automobile of the other car, but actually on the side, and there is ample testimony by Mr. Williams that he was veering to the left at the time of the accident. The last time he saw the La-fauci vehicle it appeared to be going straight ahead across the highway and he wa's closing in on the curb without first determining where this other vehicle was.
* * * * * *
“The medical testimony to the Court appeared more conclusive than reason. The Court understands that it didn’t take a particularly severe injury or accident or blow to cause the type of injury that we have here, but the Court is left pretty much in the dark as to the mechanics of the injury and why it was that it was almost about twenty-five days before this swelling manifested itself, or actually what caused the swelling.
“After considering all of the circumstances of the case the Court is going to deny the special damages and award $2500 for personal injuries.”
To better understand the intersection of Airline Highway and Williams Boulevard, we give the following explanation:
Airline Highway runs east and west, with two roadways for opposing traffic, divided by an elevated, narrow, neutral ground, all parallel as it continues across Williams Boulevard. Williams Boulevard runs north and south. On the south side of Airline Highway it has no neutral ground, but is wide enough for four traffic lanes, two each for opposing traffic. It does not continue straight across Airline Highway but, after crossing from the south, it shifts ten feet to the east, then continues on the north side of Airline the same width between parallel lines, with two lanes each for opposing traffic, divided by an elevated neutral-ground strip. The intersection is controlled by an electric semaphore red-and-green traffic signal.
Mr. Williams admitted that, when he stopped for the traffic light on the river side of the Airline Highway, he saw the Lafauci vehicle pull up on his left side; that the Lafauci vehicle was not blocking traffic going south on Williams Boulevard toward the river; and that he did not know whether the Lafauci car was going to cross Airline into Williams Boulevard on the lake side, or left (west) toward Baton Rouge; that when he was approximately halfway across Airline he saw the Lafauci vehicle was still on his left, slightly behind the front of his car, heading north in the same direction. In spite of this, Williams proceeded to shift to his left after he entered Williams Boulevard on the north side of Airline Highway, squeezing Lafauci between his car and the neutral ground. Williams thus admitted that he actually cut into the path of the Lafauci vehicle with no warning.
Lafauci’s testimony regarding what happened while the two vehicles stopped at the red light and crossed Airline Highway practically tracks that of Williams.
Plaintiff and two of her daughters corroborated the testimony of their father and Lafauci.
*45 We agree with the district judge that the accident was due to Williams’ negligence alone.
The fact that a highway makes a meandering or sharp turn, or shifts to the right or left across an intersection, does not change the relative positions of the vehicles simultaneously crossing the highway, and the duty each owes to the other vehicles.
Before a vehicle may change from one lane to another, the driver must first ascertain if he can do so without endangering following or approaching traffic; hence, Williams should not have attempted to shift to his left across the path of the Lafauci vehicle close behind to his left. Johnson v. Wilson, 239 La. 390, 118 So.2d 450; Pinard v. State Farm Mutual Insurance Co., La.App., 147 So.2d 235; Hernandez v. Hood, La.App., 125 So.2d 71; Baumann v. Allstate Insurance Company, La.App., 107 So.2d 805; Bonstaff v. Hawkins, La.App., 30 So.2d 781; LSA-R.S. 32:104 et seq.
On the question of quantum, Plaintiff’s doctor, a general practitioner, was not consulted by Plaintiff until three weeks after the accident, when she first suffered from the alleged injury. Under cross-examination, the doctor testified:
“Q. Did you, doctor, consider referring her to be examined by an orthopedist at all?
■“A. I sent her to Dr. Brent, as I recall, and to the best of my recollection, which I haven’t any notes from him, he’s a hard man to get a report from, but I do recall that he called me up one day and gave me an oral report on Mrs. Williams and two other patients that I had him see. He recommended to just continue with the conservative treatment, and play things as they would come along. Now, this is what I recall.
* * * , * * *
“Q. Well, on the basis of Dr. Brent’s verbal communication with you, is it your opinion that she had no involvement suggestive of nerve root pressure, or possible disc involvement ?
“A. There is no evidence of a true disc, but I feel there is a pinched nerve there that with time and hope it will relieve itself just with conservative treatment, and as long as she can put up with it so much the better.”
Considering the apparent mild impact of the two vehicles, with damage of only $28.00 suffered by the husband’s vehicle; that neither the husband, nor any of the three minor children suffered any injury, including the child on Plaintiff’s lap; that she told the investigating officer she had not been hurt; that she did not complain for three weeks after the accident; that she did not produce the neurosurgeon who examined her, we can only conclude that any injury she received was a minor one, and not a whiplash injury. We conclude the allowance of $2,500.00 by the district court should be reduced to $1,-500.00, based on comparable injuries. Nolan v. Employers Mutual Casualty Company, La.App., 140 So.2d 482; Dyer v. Stephens Buick Co., La.App., 125 So.2d 185; Veal v. Audubon Insurance Company of Baton Rouge, La.App., 114 So.2d 648; Plaisance v. Saucier, La.App., 82 So.2d 489.
The judgment of the district court is amended only to reduce the award to Plaintiff from $2,500.00 to $1,500.00, otherwise affirmed; Appellant, Allstate Insurance Company, to pay all costs in both courts
Judgment amended and affirmed.