LANDRY, Judge.
Plaintiff, Joseph Newton, a pedestrian, was struck by an automobile owned and being driven by defendant, Edward F. Cousin, while crossing a public highway in East Baton Rouge Parish, and instituted this action to recover damages from Cousin and his liability insurer, Hartford Accident and Indemnity Company, for personal injuries and incidental expense allegedly attributable thereto. The trial court rejected plaintiff’s demands and plaintiff has appealed.
At the time of the accident plaintiff was walking across Scotland Avenue, which is also known as and sometimes hereinafter referred to as “Highway 19”, or the “Baker Highway.” The site of the accident was an urban area situated north of the municipal limits of the City of Baton Rouge and locally referred to as Scotlandville. Description in some detail of the locus of the accident is imperative to a clear understanding of the issues presented by the instant appeal.
The accident in question occurred approximately one-half block north of the intersection of Scenic Highway, a four lane paved highway running generally in a northerly-southerly direction, and Highway 19 which runs in a generally northeasterly-southwesterly direction. The respective courses of these roadways are such that, for all practical purposes, their intersection forms an “X”. From a point a few feet north of the intersection of these highways a third street, known as Swan Avenue, runs from the west side of Scenic Highway *687 in a westerly direction to Southern University. The first block of Highway 19 north of the intersection is lined on its eastern side by an uninterrupted row of commercial and business establishments separated from the roadway only by a sidewalk. Across said highway is located a parking area which lies between the road and a railroad which parallels Highway 19 on the west. The parking area is used by customers patronizing the various establishments situated on the opposite side of the highway. There are no commercial establishments to the west of the highway. North of the intersection numerous streets branch off from the easterly side of Highway 19 and from thence run in an easterly direction. The nearest such street to the north of the intersection is Sora Street to the immediate north of which is situated Robin Street.
Commencing at a point approximately opposite Sora Street, or a distance of approximately one block, the westerly shoulder of Highway 19 is paved southerly to the intersection to provide a third or right turn lane by which traffic proceeding southerly on highway may turn either northerly onto Scenic Highway or westerly onto Swan Avenue. Except for the traffic on the aforesaid third or right turn lane, all southbound traffic proceeding along Highway 19 turns left onto Scenic Highway at the intersection in question. To control this rather complex intersection, two traffic signals have been installed. The light which controls the right turn lane of Highway 19 is situated slightly west of the main highway and therefore cannot be seen by a right turning motorist until the turn has been partially negotiated. To further control right turning vehicles desiring to enter either Scenic Highway or Swan Avenue, a small triangular block or island neutral ground has been constructed bounded by the two intersecting highways and the turn to Swan Avenue. The lawful speed limit in the vicinity is 35 miles per hour.
The accident occurred virtually in the center of the first block of Highway 19 north of the intersection. On the day of the accident, plaintiff had parked his car in the hereinabove mentioned parking lot leaving his wife and aunt in the vehicle while he patronized a pharmacy on the east side of the roadway. In returning to his automobile appellant walked a short distance northerly along the sidewalk and then proceeded to cross the street to his automobile. The northbound lane of the highway was clear but southbound motorists were backed up some distance waiting for a favorable light to proceed. Appellant walked across the clear northbound lane and between two cars stopped in the southbound lane in obedience to the traffic signal ahead. As he was in the act of crossing the third or right turn lane, appellant was struck by defendant’s automobile proceeding therein.
Learned counsel for appellant earnestly maintains the trial court erred in failing to find defendant guilty in changing from the southbound lane to the right turn lane notwithstanding plaintiff’s presence in the approximate center thereof. It is also contended the trial court erred in neglecting to find defendant guilty of negligence in traveling at an excessive rate of speed and failing to maintain a proper lookout. Able counsel for plaintiff further argues the lower court erred in finding plaintiff guilty of contributory negligence. Finally, in the alternative, esteemed counsel for plaintiff contends the trial court mistakenly failed to find defendant liable under the doctrine of last clear chance. In effect, it is contended on appeal that defendant’s principal negligence consists in his alleged sudden and abrupt changing from the southbound lane to the right turn lane while plaintiff was in the middle of the right turn lane in plain view at a time when defendant Cousin had ample opportunity to observe him and stop his vehicle thus avoiding the accident.
From the foregoing, it readily appears only factual issues are presented herein.
Shortly prior to the accident defendant Cousin left his habitation on Robin Street and drove into the southbound lane of Highway 19. Upon entering the street he found *688 traffic backed up to the vicinity of Sora Street beyond or north of the point where the right turn lane commenced. Intending to turn right to proceed on to Swan Avenue and thence to Southern University where he had a Saturday morning class, Cousin remained in the southbound lane advancing little by little as the proceeding vehicles passed through the intersection ahead. Eventually he reached the point where the right turn lane commenced. He then pulled to his right, proceeded in the right turn lane to about the middle of the block and struck defendant who stepped into the right turn lane from between two stationary vehicles in the southbound lane to defendant’s left.
The burning question is whether defendant’s vehicle struck plaintiff when plaintiff had attained the approximate center of the right turn lane, (as contended by appellant), or whether, (as argued by defendants), the impact occurred after appellant had taken only about one step into the right'turn lane. The trial court resolved this all important factual determination in favor of defendants and with this conclusion we are in agreement as will hereinafter appear.
Testifying on behalf of plaintiff, Otis Stewart averred he viewed the accident while seated in his truck parked on the west side of the highway facing easterly toward the pharmacy from which appellant emerged. In effect he testified the accident occurred directly in front of him. According to Stewart, Cousin did not proceed along Highway 19 in the southbound lane but instead passed behind the line of southbound vehicles onto the west shoulder of the road and drove along the shoulder until he reached the point where the right turn lane commenced. This testimony, as well as that of other evidence given by the witness was rejected by the trial court because of the vague, confused and contradictory nature of his statements. For example, Stewart at one point stated defendant’s vehicle was approximately 15 feet distant when plaintiff stepped into the right turn lane while on another occasion he estimated the distance to be 50 feet. In addition, he testified defendant did not apply his brakes until after the impact, which observation we believe contrary to the preponderance of evidence. Understandably, learned counsel for appellant does not strongly urge our acceptance of Stewart’s testimony as it tends to refute plaintiff’s principal contention, namely, that defendant Cousin was negligent in changing lanes while appellant was in plain view in the middle thereof. Stewart’s testimony reflects an obvious confusion and inability to relate distances and positions to certain excellent photographs of the scene introduced in evidence. Moreover, his answers to numerous questions were totally unresponsive. We conclude our able brother below properly placed little credence in this witness’s testimony.
Plaintiff testified he approached the right turn lane between two vehicles stationary in the southbound lane waiting for a change in the traffic signal ahead. Before entering the right turn lane he looked in both directions and observed no approaching traffic from either quarter. According to plaintiff, when he reached the approximate center of the right turn lane he suddenly observed defendant’s oncoming vehicle. Realizing an impact was inevitable he jumped in the air landing spread-eagle on the hood of defendant’s automobile with his hands on the windshield. He further testified defendant did not apply his brakes until after the impact thus causing him to slide back off the hood of the car onto the road. He acknowledged he arose without assistance and proceeded toward his parked automobile.
Ruth W. Newton, plaintiff’s wife, stated she was seated in plaintiff’s automobile. She did not explain precisely how she observed the accident but testified her husband was more than half way across the right turn lane when he was struck by defendant’s vehicle. In essence her testimony corroborates that of plaintiff in most respects. She testified, however, she first saw defendant’s vehicle when it was approximately twenty feet from the point of impact and was ap *689 proaching at an angle or “curve.” This testimony appears to give some support to plaintiff’s contention that defendant suddenly changed lanes immediately prior to striking appellant. However, in subsequent interrogation Mrs. Newton indicated that the angular direction of defendant’s car occurred where the pavement flares out to commence the right turn lane and she could not tell whether defendant had “pulled out of the street or out of the line.” We believe her estimate of twenty feet to be obviously incorrect.
Defendant Cousin testified he had traveled about twenty or thirty feet in the right turn lane when he observed Newton suddenly step from between two vehicles standing in the southbound lane to defendant’s left. He further testified that when he observed plaintiff take the first step into the right turn lane he could not tell ,how far away plaintiff was but he estimated the distance to be six to eight feet. According to Cousin he was traveling approximately fifteen miles per hour when he first noticed plaintiff’s presence. Cousin also testified that upon noticing plaintiff, he immediately applied his brakes which was all he had time to do as plaintiff was so near there was no possibility of avoiding the ensuing impact.
We are convinced that defendant Cousin’s estimate of his speed is substantially correct but that in estimating the intervening distance between his vehicle and plaintiff, he is honestly mistaken. In this respect the record establishes beyond doubt that defendant traveled approximately 130 feet in the right turn lane before reaching the point of impact. It further appears from the testimony of the disinterested investigating officer, Trooper Stephen O. Ledell, that defendant’s vehicle laid down fifteen feet of skid marks and then came to an immediate stop. This means, of course, the distance between defendant’s vehicle and plaintiff was in excess of six to eight feet when defendant observed plaintiff and applied his brakes. Another mute circumstance attesting the reasonableness of defendant’s speed is the unrefuted testimony of defendant that the impact was so slight plaintiff “did not lose his hat or his glasses.” Moreover, the record clearly indicates plaintiff’s injuries were slight.
Astute counsel for appellant exerted considerable effort to establish that Cousin was late for his class, and was therefore driving at an excessive rate of speed. Defendant’s testimony to the effect he was proceeding at approximately fifteen miles per hour is corroborated by the fact that his vehicle was stopped in a distance of about fifteen feet.
Plaintiff himself was unable to testify how fast defendant was driving. In substance his testimony is to the effect he did not see defendant’s vehicle prior to the impact. On at least two occasions, however, in response to the question how far away was defendant’s automobile when he saw it, he responded “right on me.”
Ella Jones, plaintiff’s aunt, who was seated on the rear seat of appellant’s automobile, testified she saw the accident through the rear window. In essence she stated she did not see defendant’s vehicle until it was approximately ten to twelve feet from the point of impact. With regard to the speed of the vehicle, she testified:
“A Well, I tell you, I am poor on judging speeding of anything, but to my idea it was twenty five or thirty to thirty five miles an hour. That’s the way I seen it, because I don’t drive. I don’t know speed limit and I am afraid to say just how fast it was.”
Predicated upon the foregoing circumstances we deem two conclusions inescapable. First, the Cousin vehicle was undoubtedly in the right turn lane when appellant claims he looked prior to entering that lane of traffic. If plaintiff did indeed look, as he testified, it is evident he failed to see what he should have seen. Second, plaintiff unquestionably stepped out into the right turn lane from between two standing southbound vehicles at a time when Cousin *690 ■was so near it was impossible for the latter to avoid striking the former.
In contending Cousin was negligent in changing traffic lanes notwithstanding plaintiff’s presence in the approximate center thereof, learned counsel for appellant cites and relies upon Williams v. Lafauci, La.App., 166 So.2d 42; Canzoneri v. Connecticut Fire Ins. Co. of Hartford, La.App., 163 So.2d 834; and Maher v. New Orleans Linen Supply Co., La.App., 41 So.2d 101.
The Williams and Canzoneri cases, supra, are factually inapposite to the case at bar. In both these cases the defendant motorist caused collisions with other vehicles by attempting to change lanes on a multi-laned street when the lanes they intended to enter were occupied by other vehicles beside or slightly to the rear of their respective vehicles. The Maher case, supra, involved a situation wherein a pedestrian crossing an intersection on a favorable signal was struck by a left turning driver. It is likewise factually dissimilar to the case at bar. In the instant case we are concerned with a pedestrian stepping from between stopped vehicles virtually in the middle of a block. Assuming, arguendo, the change of lane rule relied upon by appellant were applicable herein, plaintiff has failed to establish circumstances necessary to place his cause within the ambit of the rule. The only witness besides Cousin who professed to know when defendant changed to the right turn lane was Stewart. If we give credence to his testimony, we must conclude Cousin “changed lanes” prior to the point of commencement of the pavement constituting the right turn lane. If this were true, obviously the changing of lanes was not the proximate ■cause of the accident.
 The only other witness who testified concerning the point at which Cousin ■entered the right turn lane was Cousin himself. As herein previously shown, Cousin’s testimony, considered in the light of the established physical facts, leads to the inescapable conclusion he entered the right turn lane a distance of approximately 130 feet from the point of impact. It is obvious that Stewart’s testimony was vague and confused and Cousin is an interested party. Be that as it may, appellant offered no evidence whatsoever upon which we might rely were we disposed to doubt Cousin’s version of the accident. No citation of authority is required in support of the principle that a party seeking damages for personal injuries bears the onus of establishing his case by a clear preponderance of credible evidence.
There remains appellant’s alternative contention defendants should be cast herein under the doctrine of last clear chance. It is now well settled that the application of this doctrine is contingent upon the claimant establishing three basic elements. In Jones v. Dozier, La.App., 160 So.2d 395, we stated the rule as follows:
“The jurisprudence of this state is well established to the effect that to warrant application of the doctrine of last clear chance, plaintiff must discharge the burden of establishing three basic factors by a clear preponderance of the evidence. First plaintiff must establish that he was in a position of peril of which he was unaware or from which he was unable to extricate himself. Secondly, plaintiff must show that defendant was in a position to discover plaintiff’s peril upon the exercise of reasonable care, caution and observation. Finally, plaintiff must establish that when defendant discovered plaintiff’s peril, defendant was possessed of a reasonable opportunity to avoid the accident. McCallum v. Adkerson, La.App., 126 So.2d 835; Whitner v. Scott, La.App., 116 So.2d 180; Newton v. Pacillo, La.App., 111 So.2d 895.”
That plaintiff was in a position of peril of which he was unaware and that such peril was discovered by defendant driver appear established in the record. Plaintiff has failed, however, to show that defendant could have, by the exercise of *691 due care, caution and observation, discovered plaintiff’s perilous position sooner, or that defendant had a reasonable opportunity to avoid the accident when he did in fact detect plaintiff’s hazardous predicament. It follows that the doctrine of last clear chance is inapplicable to the case at bar.
For the foregoing reasons, the judgment of the trial court is affirmed at appellant’s costs.
Affirmed.