SAMUEL, Judge.
This appeal was taken by plaintiff, sub-rogee collision insurer of Gonzales Memorials, Inc., from a judgment dismissing its suit against the defendant railroad company. The suit is for reimbursement of $4,288.25, the property loss claim plaintiff paid its insured for damages to the latter’s flatbed truck with attached hydraulic crane, which damages resulted from the truck’s collision with a defendant tank car.
The trial court concluded the proximate cause of the accident was the concurrent negligence of the defendant’s train crew and the Gonzales Memorials truck driver. In this court appellant contends: (1) the accident was caused solely by negligence on the part of defendant; and, alternatively, (2) defendant had the last clear chance to avoid most of the damages in suit and therefore should be held liable for that major portion of the damages.
We find it unnecessary to discuss or decide the question of negligence on the part of the defendant. For we are satisfied: (1) there was plaintiff negligence which proximately caused the accident and bars recovery regardless of whether or not there was negligence on the part of the defendant; and (2) the doctrine of last clear chance is not applicable.
While engaged in a switching operation at approximately 4 a. m. on a foggy morning, defendant’s 95-car freight train was stopped on its main line in a dark, rural area with a black tank car straddling the crossing of Louisiana Highway 44, a blacktopped road running from the Airline Highway to the Sunshine Bridge. Although the train’s conductor knew the tank car was dangerous to approaching motorists, no effort was made to warn such motorists of the dark car blocking the highway.
The plaintiff truck approached the blocked crossing as it traveled on the highway in a southerly direction toward the Mississippi River. Louis Landry, the truck driver, testified the closer he came to the river the more dense the fog became. He knew the railroad track crossed the highway in the vicinity where he was driving immediately before the accident. Although he reduced his speed to approximately 20 to 25 miles per hour as he approached the crossing, he ran into the tank car which was across the highway.
At the trial Landry testified he did not see the tank car until he was approximately 27 feet from the tracks. He stated he immediately applied his brakes and, had they worked properly, he would have been able to stop without hitting the car. There is some question as to whether the truck brakes failed when the driver attempted to stop and the effect of that failure if it did occur. Both Landry and Eddie Jackson, a fellow employee who was with Landry in the truck, are self-contradictory on this question or questions. After first testifying he could have stopped in time had the brakes worked, Landry later said he would not have had time to stop even if the brakes had functioned properly. Jackson testified the tank car did not become visible through the thick fog until it was too late to apply the brakes and stop; that the brakes were not defective when Landry attempted to apply them. However, in a signed statement given by Jackson shortly after the accident, a statement he admitted signing but which he said he did not remember giving because he was dazed and had a headache at the time, he said the tank car was visible from a distance of between 50 and 75 feet; Landry began pumping the brakes when the truck *719 was SO feet from the train and the brakes failed.
From all of the evidence we find the truck brakes failed to function properly when Landry observed the tank car stopped across the highway and that he saw the car at a sufficent distance and in sufficient time so that, had the brakes functioned properly, he would have been able to bring the truck to a stop and avoid the accident.
Relying on the doctrine of latent defects in motor vehicles, particularly as enunciated in Delahoussaye v. State Farm Mutual Auto. Ins. Co., La.App., 202 So.2d 287, plaintiff argues that even if we find the truck’s brake failure was a proximate cause of the accident, and we have made such a finding, this does not constitute contributory negligence which would bar a recovery. We do not agree with the argument.
In Delahoussaye there was conclusive proof the accident was due solely and entirely to a latent defect in the brakes of the truck and the evidence was sufficient to exclude any other reasonable hypothesis as to the cause of the accident. There was also conclusive proof the defect was such that it could not have been discovered by any reasonable inspection of the braking system and that the brakes had been inspected by a qualified mechanic shortly before and immediately following the accident. These are not the facts in the instant case.
The truck was purchased by Gonzales Memorials less than four months prior to the accident when the vehicle was between five and six years old. On three different occasions during the month following the purchase it was taken to the dealer who had sold it to Gonzales Memorials for repairs to the motor and front end. The mechanic who had worked on the truck on those three occasions testified the brakes were not then defective. However, the accident did not occur until approximately two and one-half months after the last of the repairs were made.
Landry, the truck’s driver, stated the brakes had been repaired to his knowledge once before the accident and on the morning of the accident he left with what he termed only a “half brake pedal”. Landry’s testimony relative to prior brake repair was contradicted by one of the owners of Gonzales Memorials, who stated the brakes had never needed repair. He testified the brake system was checked and inspected by a service station with which he regularly did business; but plaintiff failed to call as a witness any mechanic by whom such alleged check and inspection had been made.
A motorist owes the public more than a duty of reasonable care in the operation of his vehicle upon the public thoroughfares. He also owes a duty to keep his vehicle in a safe operating condition. Our courts have been extremely reluctant to invoke the doctrine of latent defects in motor vehicles because of the strong possibility of abuse. Before the doctrine can be invoked the litigant relying thereon must show, by proof of a most convincing nature: the latent defect did exist; it reasonably could not have been anticipated or discovered by proper inspection prior to the accident; and, insofar as that litigant is concerned, the accident was due solely and entirely to the defect. In addition, the evidence must be such as to exclude any other reasonable hypothesis regarding the cause of the accident except that it resulted solely from the defect. Dowden v. Jefferson Insurance Company, La.App., 153 So.2d 162; Hassell v. Colletti, La.App., 12 So.2d 31.
In the instant case the plaintiff has failed to carry this burden. Because of the age and condition of the truck, and *720 because of prior trouble with the braking system, plaintiff’s insured reasonably should have anticipated further trouble with that system and taken proper steps to have the same inspected and repaired. In addition, as we have pointed out, there is even some evidence directly contrary to the “most convincing” proof plaintiff was required to offer. The truck driver, a plaintiff witness, testified there appeared to be some trouble with the brakes on the morning of and prior to the accident. The doctrine of latent defects in motor vehicles is not available to the plaintiff.
We now turn to plaintiff’s alternative contention, that the defendant had the last clear chance to avoid most of the damage to the truck and crane. The contention is based on the argument that, had defendant manned its train with a crew sufficient to properly handle the switching operation, it could and would have discovered the occurrence of the accident in time to avoid the greater part of the damage.
The train crew consisted of a conductor, an engineer, a brakeman and a flagman. The train had been halted and the engine detached to go into a siding in the Ormet Plant to pick up additional cars. The conductor and the engineer rode the engine into the plant. The brakeman was left where the siding joined the main line and the flagman was at the caboose at the rear end of the train. Because of the length of the train and the fact that the tank car straddling the highway was approximately in the center thereof, the train crew did not know the collision had occurred.
As a result of the collision, the hydraulic crane extending over the front end of the truck pierced the side of the tank car. According to plaintiff’s witnesses, at this point the truck itself was slightly damaged and only the tip of the crane was damaged. The truck had been closely followed by an automobile driven and occupied by Alvin Millet and Henry Delatte, the owners of Gonzales Memorials. They stopped at the scene of the accident when the collision occurred. The two employees and the two owners were unable to disengage the crane and the truck from the tank car. Millet testified he went towards the rear of the train to find a train crew member and report the accident, but he became confused and turned around so that after walking and running for some time he found himself back at the highway crossing without seeing a member of the railroad crew and without reaching the rear end of the train. Shortly after his return to the crossing, and approximately 20 or more minutes after the collision had occurred, the train moved forward and backward, dragging the truck with it and causing additional damage before the crane became disengaged. It is this additional damage to which the plaintiff claims it is entitled under the doctrine of last clear chance.
Two of the necessary elements of the doctrine of last clear chance, which the litigant relying thereon has the burden of establishing by a clear preponderance of the evidence, are: (1) he was in a position of peril of which he was unaware or from which he was unable to extricate himself; and (2) the person against whom the doctrine is invoked actually discovered, or by the exercise of reasonable care, caution and observation should have discovered, such position of peril. Gendusa v. Rabel, La. App., 212 So.2d 854, handed down this day; Glatt v. Hinton, La.App., 205 So.2d 91; Naquin v. Callais, La.App., 191 So.2d 885; Burnett v. Marchand, La.App., 186 So.2d 383; Newton v. Cousin, La.App., 182 So.2d 685; Scott v. Glazer, La.App., 164 So.2d 185. In our opinion plaintiff has failed to establish either of those elements by the required clear preponderance of the evidence or otherwise.
The truck driver, his fellow employee and the two owners on the scene after the collision occurred, of course, were aware of the position of peril. And from all of the evidence, we are satisfied they *721 were able to extricate themselves from the peril of further damage and failed to do so. They, or any one of them, could have accomplished this by reporting the accident to a member of the train crew who could have prevented the train from proceeding in any direction until after the truck and crane had been disengaged. There was sufficient time to do so. The ordinary and normal place to find a crew member was at either end of the train. Here the brakeman was at the siding in the front of the train and the flagman was at the caboose at the opposite end of the train. Yet with only one exception, the four men remained at the scene of the collision for more than twenty minutes and did nothing to warn the train crew. The exception is found in the testimony of Millet who said he attempted to go to the rear of the train for the purpose of reporting the accident to a member of its crew but became confused, never reached the end of the train and reversed his direction so that he returned to the crossing. We are unable to understand how he lost his sense of direction while following a railroad track occupied by a train.
The second requirement of last clear chance, that the person against whom the doctrine is invoked actually discovered, or by the exercise of reasonable care, caution and observation should have discovered, the position of peril, is also not present in this case. The train crew did not actually discover the accident until after the added damage was done. Whether they should have made such a discovery is dependent upon all the facts and circumstances existing at the time. It is apparent that under the facts of this case it was impossible for the train crew to learn of the collision prior to the time the additional damage to the truck and crane was occasioned.
For the reasons assigned, the judgment appealed from is affirmed.
Affirmed.