STOULIG, Judge.
Defendants, Zetz 7-Up Bottling Co., Inc. (Zetz), and its insurer, Continental Insurance Company, have appealed a jury verdict-judgment condemning them to pay $50,000 to plaintiff, Mark Sullivan, for injuries he allegedly sustained in a truck-car collision on Pontchartrain Boulevard near the City Park Avenue intersection in the City of New Orleans. Appellants contend the jury erred in finding defendants liable, and alternatively, in awarding excessive quantum. Plaintiff answered the appeal, seeking an increase in the award to $400,-000.
The record establishes Mathew Ventura, III, defendant’s driver, was negligent in executing a right turn and this was the sole proximate cause of the accident. On April 26, 1972 in heavy early morning traffic, Ventura, driving a Zetz soft drink truck, and Sullivan, driving an automobile, both executed right turns from the westbound lanes of City Park Avenue into the northbound lanes of Pontchartrain Boulevard. At this intersection, City Park has three lanes for westbound moving traffic. Vehicles in the right lane must turn right, while vehicles in the center lane have the option of turning right into Pontchartrain or continuing straight through the intersection. Pontchartrain, northbound, has two lanes for moving traffic, divided by a painted line.
Ventura, unaware of the right of the center lane motorist to either proceed *616 straight ahead or turn right, made a wide turn and collided with the right rear quarter panel of the Sullivan car in the left lane of Pontchartrain Boulevard. Plaintiff, after making his right turn, should have been in the lane where he was hit.
Appellants argue Ventura met the duty imposed on right-turning motorist by R.S. 32:101(1), namely to approach the intersection and make the right turn as close to the right curb or right edge of the roadway as possible. They point out the Zetz truck, 2V2 times as long as an automobile, could not be turned right without striking a light standard on the corner if the driver did not negotiate a portion of the body of the truck into the left lane of Pontchartrain Boulevard.
Ventura cannot rely on this law as an absolute defense because he had the duty to ascertain his turning maneuver would not interfere with the progress of another motorist for whom the left lane was designated. Stated another way, if he had to turn wide he was first obliged to ascertain it was safe to do so. In Taylor v. Allstate Insurance Company; 205 So.2d 807 (La.App. 1st Cir. 1967), the court stated that one making a right turn who allows his vehicle to protrude over into a lane adjacent to the right lane is negligent. A turning motorist must make sure his maneuver can be safely executed before attempting it. See Nesbit v. Travelers Insurance Company, 218 So.2d 396 (La.App. 2d Cir. 1969), and Scott v. Travelers Insurance Company, 194 So.2d 154 (La.App. 1st Cir. 1966).
The cases we cite are not factually similar but reason dictates the same legal principles apply in this case. Ventura, perhaps of necessity, was making a turn that would take him out of the ordinary path of travel into a lane provided for a second right-turning motorist who is not required to anticipate the truck would encroach in this lane. If the situation necessitated a sweeping turn that would involve more than one lane, the truck driver should have exercised extraordinary care before moving into a lane reserved for other traffic. Because Ventu-ra was unaware of the center lane right-turn option suggests he failed to look for traffic to his left.
The evidence clearly establishes defendants’ liability but the extent and severity of the plaintiff’s injury are clouded in confusion. Plaintiff in essence is contending the April 26, 1972 accident injured his neck and back permanently to an extent that he can no longer work as a pipefitter. There is medical evidence of neck and back injury as plaintiff claims, but the record suggests plaintiff’s complaints are exaggerated and/or his medical problems do not stem from the April 1972 accident.
One of the disquieting facts before us is that plaintiff, driving alone on June 29, 1972, ran headlong into a tree after dropping a lighted cigarette in his lap. The impact was sufficiently hard to accordion the front of his car. By contrast the April accident was a glancing blow at a slow speed.
After the April accident, Dr. Bruce Clement, a general practitioner, treated plaintiff conservatively for neck and back pain. On May 16, 1972, unable to alleviate the complaints on an outpatient basis, Dr. Clement hospitalized plaintiff at East Jefferson and called in Dr. George Byram, orthopedist, for consultation. Dr. Byram placed plaintiff in cervical traction for three days and lumbar traction for five.
On June 3, 1972, Dr. Byram discharged him from the hospital noting his complaints of pain could not be relieved. Does this mean the problem was present and medical relief was unavailable or that plaintiff’s complaints were exaggerated? From Dr. Byram’s testimony we conclude it was the latter. No objective symptoms were found to support his complaints by the orthopedist and the back pain, allegedly radiating into the back part of his leg, produced pain in unusual places. Dr. Byram explained the pain is usually experienced at nerve locations. In plaintiff’s situation, this was not the case.
When Dr. Byram discharged plaintiff from the hospital he instructed him to return to his office in several weeks. Plain *617 tiff failed to do so. In fact he did not see Dr. Byram again until he was hospitalized after crashing into the tree. On this occasion Dr. Byram saw him in the hospital during the three days he was there and then lost contact with plaintiff.
There is medical testimony by competent doctors that the April accident produced the residual neck and back injuries; however, these are predicated on a history elicited from plaintiff. If plaintiff is credible, the opinions are valid.
This brings us to the limitations of appellate review quod fact finding and adjusting damages. We think the award should be reduced, but we cannot articulate reversal-reduction logic within the “parameters” set by the Supreme Court. Therefore, we abandon our inclination to reduce quantum and adhere to the “clearly wrong”[1] and “much discretion” [2] guidelines as we understand them.
The jury apparently discounted the multiple accidents plaintiff suffered prior to this one as the source of his alleged medical complaints. Further we project they must have concluded the light tap of April 26, 1972, not the head-on collision with the immovable tree in June 1972, caused the alleged neck and back injury. Even though objective findings demonstrate plaintiff suffered trauma to his neck in the June 1972 accident (the hospital emergency records show his neck was bruised), the jury elected nonetheless to assign credibility to his assertion his neck was not injured in June. They also believed the battery of other medical complaints he stated although they rested on subjective evidence. Thus, reluctantly, as he tells it, he was forced to abandon the rigors of pipefit-ting employment for fishing from a houseboat.
If the jury found plaintiff credible as to disability causality, it is interesting to note they apparently had problems with his claim for lost wages, past and future. The testimony adduced to establish the loss was unrebutted. We could speculate plaintiff’s pre-accident work record influenced this result. An economic expert established, inter alia, the average number of hours worked per year (excluding overtime) is 2,000. In 1969 plaintiff worked 527 hours and in 1970, 145 hours. If the union records from which these figures were compiled were incomplete, plaintiff put on no evidence to explain the error.
We were not privy to the jury deliberations and cannot reconstruct how the quantum awarded was assessed. The result raises the possibility that the jury found plaintiff half credible. It would seem that general damages are excessive if the jury could not accept the lost wage claim; or conversely, that if the plaintiff suffered as he said and was disabled from working, he should have received damages for lost income. As we have said before we are unconvinced by plaintiff’s testimony. And if his word is not acceptable, his claim is minimal and should not be compensated at $50,000. Applying Reck v. Stevens, 373 So.2d 498 (La.1979), however, we find no sanctioned basis for modifying this judgment.
For the reasons assigned the judgment appealed from is affirmed, cost to be borne by appellants.

AFFIRMED.

SCHOTT, J., concurs with written reasons.
BEER, J., dissents with written reasons.

. Arceneaux v. Domingue, 365 So.2d 1330 (La.1978).

. Coco v. Winston Industries, Inc., 341 So.2d 332 (La.1977).