GLADNEY, Judge.
This suit was instituted on behalf of Mrs. Bonnie B. McGinty, a pedestrian struck and injured on January 14, 1966 b.y an automobile driven southerly by Reuben Neal Bare-more as she attempted to cross from the east to the west side of Market Street at its intersection with Wall Street in the City of Shreveport. Named as defendants are Reuben Neal Baremore, B & B System, Inc. and the Insurance Company of North America, the liability insurer of the B & B System, Inc. From a judgment rendered rejecting the demands of plaintiff she has appealed.
The case is defended on the ground that Baremore was not at fault and that the cause of the accident was the negligence of Mrs. Bonnie McGinty.
Market Street runs in a generally north-south direction and Wall runs generally from northwest to southeast entering Market on the west side and deadends. Thus there is formed an irregular “T’’ intersection. Market Street is 36 feet 10 inches wide and is surfaced with asphalt. It has a *172 white center line strip. Approaching from the north the street registers a sharp incline within approximately one block of the Wall Street intersection and then curves sharply to the right going south, the curve beginning approximately one-half block south of the intersection.
At the time of the accident a light rain was falling. Some witnesses described it as a drizzle. The lights of some of the establishments in the immediate vicinity of the accident were turned on at the time of the accident, which was 7:48 o’clock P.M. These lights and the street lights served to increase the visibility of motorists approaching the intersection. These conditions prevailed when Mrs. McGinty undertook the crossing of Market Street on foot. The resulting accident was witnessed only by the plaintiff and the driver of the automobile.
The opinion by the trial judge gives a true version of the facts as adduced upon trial of the case and offers sound reasons for the court’s judgment. With approval we adopt and set forth his findings :
“Mrs. McGinty testified that she lived in that vicinity and had been visiting friends in an upstairs apartment on the east side of Market Street and was on her way back to the Barn Lounge when struck; that she walked north on the east side of Market Street to the Keep Happy Drive-In Market directly across from the mailbox located on the neutral ground at the northwest corner of the intersection of Wall with Market; that she had taken off her glasses, as it was raining; that she stopped and looked both ways and started walking across Market at a normal walk; that she remembers reaching the center line and then about three-fourths across the street when struck; that she never stopped walking after getting into the street, and never saw the car that struck her. She also testified that she did not remember seeing an automobile approaching from either direction.
“Reuben Neal Baremore, Jr. testified that he was traveling about thirty miles per hour with his windshield wipers on, as it was raining; that as he came over the knoll he saw the headlights of cars coming toward him; that a car had just passed him when he saw Mrs. McGinty in front and to the left of the centerline; that she appeared to be standing still with her side to him; that he immediately applied his brakes; that she ran in front of his car, threw up her hands, and his car struck her. Baremore testified that he could not estimate the distance Mrs. McGinty was ahead of him when he first saw her, but that he was right upon her.
“The only other witnesses testifying to the material facts in the case (other than witnesses testifying concerning the drinking of intoxicating liquor by Mrs. Mc-Ginty, which she readily admitted, but which she and the others testified had not caused her to become intoxicated) were Mr. Cecil C. Birdwell of the Shreveport Police Department, who investigated the accident, and Mrs. J. N. Baremore, mother of the driver of the car, Reuben Neal Baremore, Jr.
“Officer Birdwell testified that there was a light rain falling when he reached the scene of the accident; that Market Street at this point is 36 feet 10 inches wide, and Mrs. McGinty was lying 15 feet 8 inches from the west curb of Market Street; that Bare-more told him ‘she was just there in the path of his automobile,’ and that ‘he didn’t specify whether she was running or standing or what, she was just there.’ Officer Birdwell further testified that when he arrived the automobile was in the southbound traffic lane of Market Street with the rear about where’ the south crosswalk would have been at the intersection, and Mrs. McGinty was lying in the street in front of the car.
“In contradiction of the testimony of Mrs. McGinty that she did not remember seeing any automobile approaching from either direction as she entered the street and until she was struck, Mrs. Baremore testified that she went to the hospital immediately upon being called by her son that the *173 accident had occurred, and that while in the hospital room she heard Mrs. McGinty tell a friend that she saw a car coming very fast from the south and one coming from the north, but thought she could make it across. But Mrs. Alice Gentry, the friend with whom Mrs. McGinty was talking, testified that she only said, ‘I saw a car coming and I couldn’t make it across,’ and nothing more.
“Counsel for plaintiff stresses the point that Mrs. McGinty was crossing Market Street within the crosswalk area of its intersection with Wall Street, and contends that under Section 19.28 of the Shreveport City Code she had the right of way, and that negligence on the part of Baremore was the proximate cause of the accident, as Mrs. McGinty entered the street when Baremore was far enough away for him to avoid striking her; and that the testimony of Officer Birdwell concerning Baremore’s statement to him at the scene of the accident, within a few minutes of the time it occurred, repúdi-ates his testimony at the trial concerning Mrs. McGinty’s position in the street when he first saw her. Counsel for defendants contend that the testimony of Mrs. Bare-more concerning the conversation she heard between Mrs. McGinty and her friend at the hospital a short time after the accident occurred repudiates this part of the testimony of Mrs. McGinty at the trial, and proves that negligence on the part of Mrs. McGinty in stepping out into the street- and attempting to cross after she saw the automobile being driven by Baremore approaching was the proximate cause of the accident and her injuries.
“While the ordinance of the City of Shreveport does give the right of way to pedestrians in the crosswalk areas of- intersecting streets when traffic control signals are not in place or not in operation, and provides that the driver of a vehicle should yield the right of way to a pedestrian crossing in a crosswalk, ‘when the pedestrian is upon the half of the roadway upon which the vehicle is traveling, or when the pedestrian is approaching so closely from the opposite half of the roadway as to be in danger,’ it also provides that, ‘No pedestrian shall suddenly leave the curb or other place of safety and walk or run into the path of a vehicle which is so close that it is impossible to yield.’
“Counsel for plaintiff relies heavily upon this city ordinance; but even if we concede that it is applicable here, we do not think it can be of. material assistance to plaintiff in this case, for it is only when the pedestrian is in the half of the street in which the motorist is traveling, or approaching so closely from the opposite half as to be in danger, and this when it is possible for the motorist to yield, that the pedestrian has the right of way.
“In our opinion the plaintiff has failed to prove by a preponderance of the evidence that Baremore had the opportunity to yield the right of way after seeing plaintiff approaching so closely from the opposite half of the street as to be in danger. The testimony of Baremore that he was traveling at a speed of approximately thirty miles per hour, looking ahead, and as an automobile passed him going in the opposite direction he saw Mrs. McGinty in front of his car and to the left of the center line and that he immediately applied his brakes, and that she ran in front of his car and was struck, exonerates him of any negligence. The testimony of Officer Birdwell that Baremore told him that she was just there in front of his automobile being the only evidence offered in contradiction of the testimony of Baremore was, in our opinion, insufficient to impeach his testimony.
“Even if there was negligence on the part of Baremore, which we do not find, we think Mrs. McGinty was guilty of contributory negligence, as in her statement in the hospital to her friend she admitted that she saw the automobile coming and attempted to cross the street ahead of it.
“Officer Birdwell found Mrs. McGinty lying IS feet 8 inches from the west curb of Market Street; and, Market Street being 36 feet 10 inches wide, she could only have *174 been a very few feet, only a step or so, over the centerline when struck; therefore she had a greater opportunity of avoiding the accident than did Baremore, as she would only have had to stop or remain a step or so short of the point where she was struck, and the accident would not have occurred. Therefore, Baremore did not have the last clear chance of avoiding the accident. * * ”
The appellant earnestly argues the trial court was in error in holding that the possession of the right of way accorded the plaintiff pedestrian under the city ordinance was irrelevant. As reflected in its provisions the ordinance conditionally grants the privileged right of way “when the pedestrian is upon the half of the roadway upon which the vehicle is traveling, or when the pedestrian is approaching so closely from the opposite half of the roadway as to be in danger.” These provisions must be construed in connection with the injunction that the pedestrian shall not “walk or run into the path of a vehicle which is so close that it is impossible to yield.” It must be recognized, of course, that in all cases it is the duty of a motorist to insure the safety of a pedestrian whenever possible, and of course this implies that he shall when such conditions exist, yield to a pedestrian. Certain circumstances give rise to an accident, however, even though due diligence and every effort is used to prevent the occurrence. The ordinance does no more than require the motorist to yield when he can do so. Likewise the ordinance recognizes the duty of the pedestrian to utilize his own senses to the best of his ability for the assurance of his own safety.
“The driver of an automobile has the right to assume that a pedestrian will exercise reasonable care for his own protection and will not leave a position of safety and proceed into the path of an oncoming vehicle. * * * We recognize the fact, as the Court has seen it happen, that a pedestrian will proceed across a street or highway, but stop prior to crossing the center line so that oncoming traffic might pass by him.”
[Naquin v. Callais, La.App., 191 So.2d 885, 889, 1st Cir. 1966]
Careful examination of the facts fails to disclose to any degree of certainty the distance, the time and opportunity available to Baremore before his car struck Mrs. Mc-Ginty. Counsel estimated that Mrs. Mc-Ginty had walked 27 feet which consumed 7 seconds when she arrived at the point of impact. From this he infers that the Bare-more automobile traveling at 30 miles per hour was some 308 feet distant. Such evidence considered alone cannot serve to contradict the direct testimony of Baremore who testified that he was very close to Mrs. McGinty when he first observed her in front of his automobile and that he did everything reasonably possible to prevent striking her. The fact that it was raining and during the hours of darkness render his testimony more credible.
It is incumbent upon the plaintiff to establish her case to a legal certainty. To make her case probable is not enough. Roberts v. M. S. Carroll Company, La.App., 68 So.2d 689 (2nd Cir. 1953).
In alternative argument appellant contends the trial court erred when it failed to hold that the defendant Baremore had the legal obligation and the last clear chance to avoid this accident.
“The rule of ‘the last clear chance’ or ‘discovered peril’ applies to both parties who are involved in an accident. In 38 Am. Jur. Negligence, Sec. 227, that thought is expressed as follows: ‘As graphically stated by some authorities, the doctrine of discovered peril is a two-edged sword, applicable equally to the rights of a defendant and those of a plaintiff.’ ”
[Bergeron v. Department of Highways, 221 La. 595, 60 So.2d 4, 8 (1952)]
It is our conclusion that the accident would not have occurred except for the *175 fault of Mrs. McGinty in attempting to cross the street without exercise of due care. And we further hold that Baremore was not negligent.
For the reasons assigned the judgment appealed from is affirmed at appellant’s cost.