CULPEPPER, Judge.
This is a suit for damages for personal injuries. Plaintiff, a pedestrian, was struck by a vehicle driven by the defendant, Clinton L. Harris, and insured by Maryland Casualty Company. The district judge allowed plaintiff recovery under the doctrine of last clear chance. Defendants appealed.
In our view, the decisive issue is whether the defendant motorist was negligent. We conclude he was not.
The scene of the accident is in a rural area near Benson, Louisiana on U. S. Highway 171, a two-way, two-lane thoroughfare running generally north and south. The weather was fair and it was dark.
Much of the evidence is in conflict, but the following are the general facts. Mr. Bob Taylor, with plaintiff as a passenger, was driving a flatbed truck and trailer in a southerly direction. Taylor testified that a white Oldsmobile, traveling in a northerly direction, came into his lane of traffic and an accident ensued. After the collision, Taylor stopped his truck on the west shoulder of the road about 250 yards south of the point of impact. The Oldsmobile came to rest crosswise in the north bound lane. Taylor and the plaintiff got out of the truck and ran back to see the effects of the collision. The defendant Harris approached from the south and struck plaintiff near the disabled Oldsmobile.
The testimony of plaintiff and Mr. Taylor is vague, contradictory and at variance with the other witnesses and the physical facts reflected by the skidmarks left by defendant’s vehicle. Essentially, plaintiff’s version is that after Taylor stopped his truck on the west shoulder they ran across the highway and thence along the graveled east shoulder toward the Oldsmobile. They saw a large tank truck which had approached from the north and stopped on the west shoulder of the highway about 60 feet south of the wrecked vehicle. When they reached the Oldsmobile, they saw that one of its passengers was lying on the pavement, apparently dead. Two others in the vehicle were badly injured. They were standing on the east shoulder, with Taylor ahead and plaintiff farther south. Taylor heard, the tires of defendant’s approaching automobile “squalling”. He escaped by running to the ditch. Plaintiff says he became aware of the headlights of defendant’s vehicle too late to escape. The right front of defendant’s automobile “clipped” plaintiff’s knees and sent him sprawling forward.
Defendant’s version of the accident is much different. Mr. Harris lives in Lees-ville and is employed by the United States Department of Agriculture in Shreveport. Each morning about 4:30 a. m. he leaves his home and drives to work. He says he has observed that it is customary for truck drivers along this road to pull onto the shoulder and place their blinker lights in operation while they sleep.
Mr. Harris testified that on this particular morning he was driving in a northerly direction at a speed of about 60 miles per hour when he first saw Taylor’s truck parked on the west shoulder with the blinker lights operating. He then saw the tank truck also parked on the west shoulder with its blinker lights in operation. He thought these were trucks with sleeping drivers. He put his lights on low beam and slowed to about 40 miles per hour. As he came near the tank truck, he saw a man suddenly run from the truck across the highway ahead of him. At the same time, he also saw another man standing near the tank truck. Harris testified he immediately “locked” his brakes and cut to the left in an effort to avoid striking the man who was running across the highway in front of him. However, the right front of his vehicle struck the man and threw him forward onto the pavement. Harris also testified that he never left the pavement and he stopped his vehicle partially in the south bound lane and 20 to 40 feet south of the Oldsmobile.
*48 Harris’ version of the accident is corroborated by the other witnesses. Sgt. Jerry E. Rains testified he found Harris left skidmarks 65 feet in length entirely in the north bound lane and swerving on the north end toward the west. Sgt. Rains estimated that at the time plaintiff was struck he was located on the paved portion of the highway, three or four feet from the east edge and about 60 feet south of the Oldsmobile. Pictures which Sgt. Rains took soon after the accident show the vehicle and the skidmarks and fully corroborate his testimony.
The defendant motorist is also corroborated by Mr. Elmer Maddox, driver of the tank truck. He says he was driving in a southerly direction when he came upon the scene. He first stopped his truck in the south bound lane opposite the disabled Oldsmobile and saw the dead and injured passengers. Then he started forward in order to park on the west shoulder. While still moving he saw Mr. Taylor running down the road toward him. Maddox says he stopped on the west shoulder about 60 to 70 feet south of the Oldsmobile. Taylor came over to the side of the tank truck and asked for assistance. While they were talking, Maddox saw the lights of defendant’s automobile as it came over a “rise” about 300 yards south of the scene. Maddox testified he blinked his headlights and yelled at Taylor to watch out for defendant’s approaching vehicle. Maddox then heard the Harris automobile apply its brakes and saw it skid past him. Up until that time Maddox had not seen the plaintiff, Stevenson. Maddox says he then got out of his truck and took a flashlight to warn traffic. He saw Mr. Taylor bending over plaintiff’s body on the paved portion of the highway. Maddox also saw the defendant motorist’s skidmarks and says they did not leave the pavement and stopped before they reached the Oldsmobile.
The district judge recognized the difficulty of determining the facts under the conflicting testimony. He decided, in view of the skidmarks, that plaintiff was not on the graveled shoulder but was on the paved portion of the highway at the time of impact. However, he concluded that the crucial question was whether plaintiff was standing still, or running into the path of the defendant motorist. He found plaintiff was standing still and that Harris should have seen him in time to stop. We cannot agree. It is our conclusion that regardless of whether plaintiff was standing still or running, the defendant motorist is free of negligence in failing to see him in time to avoid the accident.
The evidence shows that it was dark. Plaintiff was dressed in overalls, a black jacket and a gray felt hat. This case is very similar to Calais v. Thibodeaux, La.App., 220 So.2d 209 (3rd Cir. 1969), writ of certiorari refused, in which we held as follows :
“The general rule is that a night motorist has the duty to avoid striking objects in the road ahead. However, this rule is subject to the exception that he is not charged with the duty of guarding against striking an unexpected or unusual obstruction, which is difficult to see and which he had no reason to anticipate he would encounter on the highway, (citations omitted)
“The exception has been applied in several cases where a night motorist failed to see a pedestrian on the highway wearing dark clothes. For instance, in the recent case of Odom v. State Farm Mutual Automobile Association, La.App. 203 So.2d 752 (3rd Cir. 1967) we held under similar circumstances that a night motorist was free of negligence where he was passing another vehicle and struck two men who were near the center of the highway attempting to move a dead hog. In Jacquet v. State Farm Mutual Automobile Insurance Company, La.App., 208 So.2d 732 (3rd Cir. 1968, writ of cer-tiorari refused) a night motorist struck a pedestrian who was either walking along the traveled portion of the highway or staggered onto it immediately in front of the vehicle. We held the motorist free of negligence. The facts *49 showed that the pedestrian was dressed in dark clothing and the accident occurred in a rural area, (citations omitted)

“In our view, plaintiff’s argument does not negate the application of the rule established in the above cited jurisprudence. This Negro pedestrian, without a light, wearing dark clothes and walking down the main traveled portion of the highway at night, was very difficult, if not impossible, to see. He was also an unusual and unexpected obstruction. This was a rural area where there are few pedestrians. The speed limit is 60 miles per hour. The average motorist would not expect a pedestrian to exercise so little care for his own safety. The best evidence of these facts is that two motorists, both of whom were driving with reasonable care and prudence, actually did fail to see the deceased until they were a few feet from him.”
In the present case we have a pedestrian, wearing dark clothes and either running or standing on the main traveled portion of a main highway. It was a rural area where pedestrians are unusual. Mr. Maddox had stopped and surveyed the area but had not seen the obscure plaintiff. Defendant Harris had seen the blinking lights of the truck and had dimmed his lights and slowed to a reasonable speed of about 40 miles per hour. He stopped his vehicle before reaching the disabled Oldsmobile blocking his lane. The relatively short length of his skidmarks confirm these facts. He was keeping a careful lookout, but was simply unable to see such an unexpected and obscure obstruction in time to avoid the accident.
For the reasons assigned, the judgment appealed is reversed and set aside. Judgment is now rendered in favor of defendants, dismissing plaintiff’s suit at his costs. All costs of this appeal are assessed against the plaintiff appellee.
Reversed and rendered.