CUTRER, Judge, ad hoc.
This is a suit for property damages by the Travelers Indemnity Company and Robert E. Peavy against Walter Ben arising out of an automobile accident involving a vehicle driven by Mrs. Peavy and a vehicle driven by Warren Ben, the minor son of defendant. Travelers was the collision insurer of the Peavy automobile and sued as a subrogee of Peavy. Peavy seeks the deductible paid by him. From a judgment dismissing the suit, plaintiffs appeal. Defendant did not appeal nor answer the appeal. We reverse.
The accident giving rise to this litigation occurred on October 11, 1968, at approximately 3 :30 P.M. on La. Highway 1, within the city limits of Brusly, Louisiana. Highway 1, at the scene of the accident, is *555 a four-lane concrete surfaced highway with two lanes for each direction of traffic. There is a wide neutral ground separating these lanes. The weather was clear and the highway surface was dry at the time of the accident.
Mrs. Peavy was driving the community two-door Plymouth automobile and entered Highway 1 from a service road on the east side, crossed the two northbound traffic lanes and stopped in the wide neutral ground separating the two lanes of traffic. She was accompanied by three teenage girls, Alice, Marilyn and Martha Hebert. She stopped in the neutral ground for the purpose of allowing Alice Hebert to get out of the car. Alice lived in the neighborhood and she was going to walk to her home. After letting Alice out of the car, Mrs. Peavy turned to her left into the southbound lanes of traffic. After making her left turn and having proceeded approximately 174 feet from the intersection Mrs. Peavy’s vehicle was struck from the rear by an automobile operated by Warren Ben, the minor son of defendant.
The trial court’s oral reasons were brief, and made no findings of fact except that Mrs. Peavy did not see the Ben vehicle prior to the accident. We reiterate as follows :
“THE COURT: Personally the Court doesn’t think there’s any doubt that there were two people negligent here, as the police stated that she said he must have been coming mighty fast because she didn’t see him. Now, as to whether the last clear chance applied in this case, that is the only serious problem as far as the Court is concerned, whether or not it does apply. However, as there are two people negligent, the Court believes it’s up to the plaintiff to prove this last clear chance, and as there’s a doubt in the Court’s mind, the Court dismisses the suit at plaintiffs’ costs.”
The plaintiffs-appellants contend that the trial court erred in finding Mrs. Peavy negligent, or in the alternative by not applying the doctrine of “last clear chance.”
The trial court was impressed with the investigating officer’s testimony which reflected that Mrs. Peavy stated to him that she did not see the Ben car approaching as she entered the lanes of travel. Mrs. Peavy testified that as she entered the southbound lane of traffic, the Ben car was three or four blocks away. She stated that she had proceeded to the right-hand lane of traffic and had proceeded approximately one-half block when her car was hit from the rear. Mrs. Peavy testified she heard no brakes or other noise prior to the impact. She estimated her speed at approximately 25 miles per hour as she intended to turn right at the next corner, which is located approximately a block from the cut-through.
Martha Hebert, one of the occupants of the Peavy car, testified that the Ben car was “a long way off” as they stopped at the intersection to let Alice out. On cross-examination she estimated the distance to be three times the length of the courtroom. The courtroom was estimated to be seventy feet long. This witness admitted that she was not observing Mrs. Peavy’s driving very closely. She was not sure that the car she had seen was the one which struck Mrs. Peavy’s car.
Alice Hebert testified that after getting out of Mrs. Peavy’s car, Mrs. Peavy turned left into the southbound lanes going directly into the right-hand lane. She further testified that the Ben car was so far down the highway that she walked across the southbound lanes of traffic and up near the adjacent railroad track before the Ben car passed her and the impact occurred. She stated that she heard no brakes squealing prior to the impact.
Warren Ben testified that he was driving approximately 60 miles per hour as he approached the cut-through intersection. Ben stated that he saw Mrs. Peavy stopped in the neutral ground when he was about one block away. He estimated the distance *556 of a block as 350 feet. Ben further stated that as he was approximately 60 feet away from the cut-through intersection, Mrs. Peavy pulled into the southbound lanes of travel. He said that she first turned into the left lane and then suddenly turned into the right lane immediately ahead of him, and the impact occurred. He testified that Mrs. Peavy was traveling slowly.
Defendant also called Beverly Bynum as a witness. She stated she was standing near the scene of the accident waiting for a ride. Miss Bynum testified that she saw the accident and estimated that the Ben car was 15 feet from the intersection when Mrs. Peavy pulled out in front of him.
Defendant called Lieutenant Jasper Den-icola, the investigating state police officer. He testified that he measured 174 feet of skid marks left by the Ben automobile, which skid marks began at the south edge of the cut-through and extended 174 feet in the right-hand lane. He concluded that the impact occurred at the end of the skid marks, or 174 feet from the cut-through. Lieutenant Denicola stated that the speed limit on Highway 1 was 70 miles per hour. He talked to the two drivers and stated that Mrs. Peavy told him she did not see the Ben automobile. The trial judge apparently accepted the fact that Mrs. Peavy had not seen the Ben car as he referred to this in his oral reasons for finding Mrs. Peavy negligent.
The testimony reflects wide variations as to the location of the Ben car as Mrs. Peavy entered the southbound lanes of traffic. There are, however, factors which were established with reasonable certainty, and from which we can draw reasonable conclusions as to the existence of other factors. The facts which are established are that 174 feet of skid marks were left by the Ben vehicle, beginning at the intersection. This means that the accident occurred approximately 174 feet south of the cut-through intersection. The accident occurred in the southbound lane of traffic. The skid marks of the Ben automobile were located entirely in the southbound lane of traffic. Mrs. Peavy had traveled from a stopped position, made a left turn, and was traveling at a speed of approximately 25 miles per hour at the time of the impact. We are convinced that as Mrs. Peavy made her left turn she proceeded directly into the right-hand lane. At the time Mrs. Peavy entered the right lane, Warren Ben was also in that lane traveling approximately 60 miles per hour, which was below the speed limit of 70 miles per hour. Using the tables found in Blashfield’s Encyclopedia of Automobile Law & Practice, Volume 9-C, Section 6237, for Mrs. Peavy to have traversed the 174 feet at an average speed of 20 miles per hour, she would have consumed 5 to 6 seconds of time. Traveling at 60 miles per hour, Ben was traveling 88 feet per second. This means, at the time Mrs. Peavy entered the traffic lanes, Ben was between 440 to 528 feet from the intersection. Considering reaction time, Ben could have stopped his vehicle in 226 feet.
After a careful review of the record and testimony of all the witnesses, this court agrees with the lower court that both drivers were negligent.
The law on this subject is set out in the case of McQuillin v. Travelers Indemnity Company, 171 So.2d 691 (La.App. 2d Cir. 1964), where the court stated as follows:
“In the case of Jones v. Travelers Insurance Company, [La.App.] 149 So.2d 441, the Court stated the law thusly:
‘The primary duty of avoiding a collision rests upon the driver of a vehicle entering a public highway from a private driveway, such a driver being required to keep a lookout for vehicles upon the highway and to not enter the highway until it becomes apparent to him, or until it should become apparent to a reasonably prudent person, that he can do so safely. Holland v. United States Fidelity & Guaranty Company, La.App. (2nd Cir.) 131 So.2d 574; Vidrine v. Simo- *557 neaux, La.App. (3rd Cir.) 145 So.2d 400; Chandler v. Grain Dealers Mutual Insurance Company, La.App. (2nd Cir.), 131 So.2d 606. The motorist intending to enter a main highway from a private driveway, however, is not required to desist from making his entry as long as any traffic is in sight, but his duty is only to refrain from doing so until it should appear to a reasonably prudent person that the entry can be made in safety and without obstructing the passage of traffic from either side. Higginbotham v. Frazier, La.App. (1st Cir.) 92 So.2d 89 (Cert. denied).’ ”
Mrs. Peavy entered this highway knowing that it was a through highway. She entered the highway slowly, went into the right lane, in which lane was located the Ben car traveling 60 miles per hour. She failed to keep a proper lookout in ascertaining the traffic conditions and the presence of the Ben car as she entered this thoroughfare. By so entering such a highway she exposed herself to danger from the traffic which was proceeding thereon within the existing speed limit of 70 miles per hour.
Warren Ben was also negligent in the operation of the vehicle he was driving. He was not keeping a proper lookout as he approached the cut-through intersection. He had ample time, had he been keeping the proper lookout, to have brought his vehicle under control and to have avoided the accident by either slowing his car or taking evasive action. Traveling on a favored street does not relieve a motorist of his obligation to operate his vehicle in a prudent manner with due respect for those who may be entering and proceeding thereon, Robert v. Travelers Indemnity Company, 196 So.2d 657 (La. App.1st Cir. 1969).
This brings us to the issue of whether the doctrine of “last clear chance” should be applied. The trial court recognized this as a serious problem, but felt that plaintiff had failed to establish same. We have concluded that this was error and that the doctrine should apply.
Before the doctrine of "last clear chance” can be successfully invoked three essential facts must be established: (1) that the person invoking the doctrine was in a position of peril of which he was unaware or from which he was unable to extricate himself; (2) that the person against whom the doctrine is invoked actually discovered or was in a position where he could and should have discovered such other person’s peril; and (3) that at such time the person against whom the doctrine is invoked could have avoided the accident with the exercise of reasonable care. Sonnier v. Great American Insurance Company, 134 So.2d 363 (La.App.3rd Cir. 1961); Lavigne v. Southern Farm Bureau Casualty Insurance Co., 125 So.2d 430 (La.App.3rd Cir. 1960); Clark v. Shannon, 120 So.2d 307 (La.App.2d Cir. 1960); Wells v. Meshell, 115 So.2d 648 (La.App. 2d Cir. 1959); Moore v. Shreveport Transit Company, 115 So.2d 218 (La.App. 2d Cir. 1959); Newton v. Pacillo, 111 So. 2d 895 (La.App.2d Cir. 1959).
Under the facts of this case it was established that Mrs. Peavy, by her negligence, had placed her automobile in a position of peril of which she was unaware. Since we have concluded that Warren Ben was at such a distance, that had he been keeping a proper lookout, he could have discovered Mrs. Peavy’s position of peril and could have avoided the accident by the use of reasonable care, therefore, we find that this is a proper case for the application of the doctrine of “last clear chance”.
Having concluded that the doctrine of “last clear chance” applies, the plaintiffs are entitled to judgment.
It was stipulated that the total property damage incurred by the Peavy vehicle was $2,227.60. The subrogation agreement reflects that Travelers is subrogated to $2,127.60 of this, leaving $100.00 in damages incurred by Robert E. Peavy.
*558 For the reasons assigned the judgment of the lower court is hereby reversed granting the plaintiff Travelers Indemnity Company a judgment of $2,127.60, the amount of its subrogation claim, against Walter Ben, and awarding Robert E. Peavy a judgment of $100.00, the amount of his deductible, against Walter Ben. The defendant-appellee, Walter Ben, is hereby cast for all costs of the lower court and the costs of this appeal.
Reversed and rendered.