295 So.2d 593 (1974)
Oren D. ORTEGO, Plaintiff-Appellant,
v.
STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, Defendant-Appellee.
No. 4525.
Court of Appeal of Louisiana, Third Circuit.
May 24, 1974.
Rehearing Denied June 26, 1974.
Writ Refused September 18, 1974.
*594 Young & Burson by I. J. Burson, Jr., Eunice, for plaintiff-appellant.
Gist, Methvin & Trimble by DeWitt T. Methvin, Jr., Alexandria, for defendant-appellee.
Before HOOD, CULPEPPER and DOMENGEAUX, Judges.
HOOD, Judge.
Oren D. Ortego claims damages for the death of his father, Wilson Ortego, resulting *595 from injuries which the latter sustained when he was struck by a vehicle being driven by Mrs. Loretta G. Douget. The defendant is State Farm Mutual Automobile Insurance Company, the liability insurer of Mrs. Douget. The trial court rendered judgment for the defendant, and plaintiff has appealed.
The issues presented are whether the defendant's insured was negligent, whether the decedent also was negligent thus barring plaintiff from recovery, and whether Mrs. Douget had the last clear chance to avoid the accident.
The accident occurred at about 7:15 P. M. on December 26, 1970, on East Stagg Street in Basile, Louisiana. While Mrs. Douget was driving her husband's Volkswagen stationwagon in an easterly direction on the above mentioned street, the stationwagon struck Wilson Ortego, a pedestrian. Mr. Ortego sustained serious injuries as a result of that accident, his injuries including several fractures and a cerebral concussion. He died on May 25, 1971, and the evidence shows that his death was causally related to the above mentioned accident. His condition from the time he was injured until the date of his death was such that he was never able to relate how the accident occurred.
East Stagg Street at and near the site of the accident is a straight, relatively narrow blacktopped street, running east and west and located in a residential area in the eastern part of the Town of Basile. There were no sidewalks on either side of that street, but ditches ran along both sides of it, the ditches being a few feet from the edges of the blacktopped slab.
Two other streets, both running north and south, join or form junctions with East Stagg Street in that immediate vicinity. One of these is Clark Avenue, which joins the north edge of East Stagg Street, forming a "T" intersection. The other is an unnamed street which also joins the north side of East Stagg Street, forming a "T" intersection, this last mentioned junction being about 300 feet east of the intersection of Clark Avenue and East Stagg Street. A vapor street light is located in the northeast corner of the intersection of Clark Avenue and East Stagg Street and another similar street light is located in the northeast corner of the intersection of the unnamed thoroughfare and East Stagg Street. The accident occurred approximately 100 feet east of the junction of the unnamed street and East Stagg Street. Several residences are located on both sides of East Stagg Street at and near the site of the accident.
The weather was clear when the accident occurred. It was dark but there was no fog, smoke, rain or any other weather condition which in any way impaired the vission of the driver of the vehicle. The lights of the Douget stationwagon were on, and Mrs. Douget concedes that there were no oncoming or following vehicles in sight at that time. There thus were no headlights or anything else which interfered with her vision of the street ahead of her. Both of the above mentioned street lights were on at that time, providing some illumination for that entire area. Mrs. Douget's three children were in the stationwagon with her at that time. She was driving at a speed of about 25 miles per hour immediately before and at the time of the accident.
Plaintiff contends that immediately prior to the occurrence of the accident, Mr. Ortego was walking in an easterly direction on the north edge of East Stagg Street, and that Mrs. Douget was traveling in the same direction approaching from Mr. Ortego's rear. He claims that due to a rough place in the surface of the south lane of traffic on East Stagg Street, Mrs. Douget drove her vehicle into the north lane in order to go around or avoid that defective part of the street, and that while on the left side of this thoroughfare, in her wrong lane of traffic, she struck the decedent. Plaintiff contends that Mrs. Douget was negligent in veering into the wrong lane of traffic, in failing to maintain a *596 proper lookout and in failing to take proper action to avoid the accident.
Defendant contends that the deceased was in Mrs. Douget's lane of traffic, near the center of East Stagg Street, when he was struck. It argues that Mr. Ortego was wearing dark clothes, and that immediately before and at the time of the accident he was bent over, with his hands touching or almost touching the surface of the street. Mrs. Douget stated that she was in her proper lane of traffic, that she was within six feet of the decedent when she first saw him, and that it was too late then for her to avoid striking him. Her testimony is supported by that of her 11 year old son, who was sitting in the front seat of the stationwagon with her. Defendant argues primarily that Mrs. Douget was free from negligence in failing to see Ortego in the street ahead of her in time to avoid the accident, since the decedent in his dark suit and stooped position constituted an unusual and unexpected obstacle in the road. It contends, alternatively, that Mr. Ortego also was negligent, and that plaintiff thus is barred from recovery by the contributory negligence of the decedent.
The decedent was wearing dark clothes at the time the accident occurred, but he also was wearing a light tan hat. The examining physician testified that the injuries sustained by Ortego were of such a nature that they could have been sustained either while he was standing, as contended by plaintiff, or while he was bent over with his hands touching or almost touching the surface of the street, as contended by defendant.
The decedent was 71 years of age when this accident occurred. He customarily drank alcoholic beverages almost every day, and the evidence shows that he drank two-thirds of a pint of wine between noon and 4:30 P. M. on the date of the accident. A partially consumed bottle of wine was found near his body after he was struck by the Douget vehicle. The evidence does not show, however, that Mr. Ortego was drunk at the time the accident occurred, or that he was intoxicated to the extent that his mental faculties were affected, or that he was unable to walk straight or to remove himself from the path of an approaching vehicle. He was observed by some witnesses between 4:30 P. M. and the time the accident occurred about three hours later, and all of them testified to the effect that "he wasn't drunk," and that he was able "to walk a straight line." One witness who saw Mr. Ortego walking on Clark Avenue just a few minutes before the accident occurred stated that he was dressed in a suit, that he "was walking straight," and that it was "just a normal walk." Another witness who saw the decedent on East Stagg Street only a few moments before he was struck said that he was "walking straight." And, the doctor who examined and treated him immediately after the accident does not recall that he smelled liquor on the breath of the decedent.
The trial judge did not assign written reasons for judgment. The evidence convinces us, however, that at the time the accident occurred Mrs. Douget was in the south, or in her proper, lane of traffic, and that the decedent was in the north part of that lane. We conclude that he was bending over at that time, with his hands either touching or almost touching the surface of the road, as stated by Mrs. Douget. We also find that Mr. Ortego was not drunk or intoxicated at the time of the accident. In the absence of a showing to the contrary, we must conclude that he was physically and mentally capable of observing the approaching Douget vehicle and of taking some action to remove himself from the path of that oncoming car.
There was a rough spot in the south lane of East Stagg Street at a point about 100 feet west of the point where the accident occurred. We find, however, that Mrs. Douget did not veer to her left to avoid striking that rough spot, and that there thus is no merit to plaintiff's contention that she turned into the north lane of traffic and struck plaintiff while he was walking *597 along the north edge of East Stagg Street.
The general rule is that a motorist is held to have seen an object which by the use of ordinary care and prudence he should have seen in time to avoid running into it, and that the driver of an automobile is guilty of negligence in driving at a rate of speed greater than that which would enable him to stop within the range of his vision. He does not have the right to assume that his course of travel is free from danger or obstruction, in the absence of his ability to see clearly ahead, and if he continues to travel as if he knew there was perfect clearance ahead, he does so at his own risk and peril. McCain v. State Farm Mutual Automobile Ins. Co., 236 So. 2d 922 (La.App. 3 Cir. 1970) and cases cited therein; Government Employees Insurance Company v. Hebert, 267 So.2d 217 (La.App. 4 Cir. 1972).
Exceptions to the above stated general rule have been made in a number of cases because of the unusual and extraordinary circumstances which were found to exist in those particular cases. Gaiennie v. Cooperative Produce Co., 196 La. 417, 199 So. 377 (1940); Vowell v. Manufacturers Casualty Insurance Company, 229 La. 798, 86 So.2d 909 (1956); and the progeny of those cases.
In the instant suit there was nothing to obstruct the vision of Mrs. Douget as she traveled east on East Stagg Street. Her headlights were burning, and there were street lights in that vicinity which also should have illuminated a person in the street ahead of her. The accident occurred in a residential area, and Mrs. Douget was familiar with that area. She was returning from church, and should have anticipated that others also would be doing so, some of whom might be pedestrians. We do not feel that the fact that the decedent was wearing a dark suit, in itself, excused Mrs. Douget from the duty of seeing him on the street, but the evidence shows that he also was wearing a light colored hat, and no satisfactory explanation has been offered as to why the driver did not see that part of his apparel in time to avoid the accident. We believe that the presence of a pedestrian on the street in that vicinity and at that time cannot be regarded as an unusual, unexpected or extraordinary circumstance sufficient to relieve Mrs. Douget of the duty imposed on her by the above stated general rule.
Applying the above stated law to the facts of this case, we conclude that Mrs. Douget was negligent in failing to observe Mr. Ortego in the street ahead of her in sufficient time to avoid the accident. We think her negligence in that respect was a proximate cause of the accident.
Although we find that Mrs. Douget was negligent, we conclude that the decedent, Mr. Ortego, also was negligent, and that his negligence was a proximate and contributing cause of the accident.
A plausible explanation as to why Mr. Ortego was in the path of the oncoming Douget vehicle is that he was crossing from the north to the south side of East Stagg Street to go to the home of his brother-in-law, Louis Johnson, located south of that street, where he visited frequently. He was seen on the north side of the street a few moments before the accident, and yet when he was struck he was about in the middle of the street facing south. Regardless of his reason for being in or near the center of the street, however, we have concluded that he was not drunk, he had his mental faculties, and he was able to walk normally. There is nothing in the record to explain his conduct in bending over in the highway, in the path of a single easily discernable approaching motor vehicle, and not moving out of the way before the relatively slow moving vehicle struck him. The evidence convinces us that he was able to observe the Douget car, and to avoid stepping in front of it. He also had the ability to get out of its way before the car reached him.
*598 Pedestrians, as well as motorists, are charged with the responsibility of seeing what they could or should have seen in the exercise of due care. Robertson v. DiGerolamo, 224 So.2d 118 (La.App. 4 Cir. 1969); Glatt v. Hinton, 205 So.2d 91 (La. App. 4 Cir. 1967); Burnett v. Marchand, 186 So.2d 383 (La.App. 1 Cir. 1966).
We think Mr. Ortego was negligent in placing himself in a position of peril by walking in front of an approaching vehicle, which he must be held to have seen, and in stopping there and failing to move out of the path of that car before it struck him. His negligence in that respect was a proximate or contributing cause of the accident, and plaintiff thus is barred from recovery, unless the evidence shows that the defendant's insured had the last clear chance to avoid the accident. Robertson v. DiGerolamo, supra; Glatt v. Hinton, supra.
We turn now to plaintiff's argument that Mrs. Douget had the last clear chance to avoid the accident, and that her insurer thus is liable for the damages which plaintiff sustained as a result of that accident.
In order for plaintiff to successfully invoke the doctrine of last clear chance, the evidence must show clearly: (1) That plaintiff was in a position of peril of which he was unaware, or from which he was unable to extricate himself; (2) that the defendant actually discovered, or should have discovered, the plaintiff's peril; and (3) that at the time defendant actually discovered, or should have discovered, plaintiff's peril, defendant had a reasonable opportunity to avoid the accident. Vidrine v. American Employers Insurance Company, 189 So.2d 727 (La.App. 3 Cir. 1966); Travelers Indemnity Company v. Ben, 269 So.2d 553 (La.App. 1 Cir. 1972).
The evidence in the instant suit shows that Mrs. Douget did not actually discover the decedent's peril in time to avoid the accident, but that she should have discovered it in time to do so. The last two elements of proof required for the application of the last clear chance doctrine thus are present here. The first of those three essential elements, however, has not been established, and that is that Mr. Ortego was in a position of peril "of which he was unaware, or from which he was unable to extricate himself."
The rule or doctrine of "last clear chance" applies to both parties who are involved in an accident. Such a rule has been said to be a "two-edged sword," applicable equally to the rights of the defendant and those of the plaintiff. When the plaintiff actually discovers or should have discovered his peril in time to extricate himself from the danger, and then fails to do so, he may not recover under the last clear chance rule, because he also had a clear chance to avoid the accident and was guilty of contributory negligence in failing to do so. See Guillotte v. Fireman's Insurance Company of Newark, N. J., 207 So.2d 783 (La.App. 3 Cir. 1967); Glatt v. Hinton, supra; McGinty v. Insurance Company of North America, 205 So.2d 170 (La. App. 2 Cir. 1967).
Our ultimate conclusion is that plaintiff is barred from recovery by the contributory negligence of the decedent. We also conclude, for the reasons assigned, that plaintiff is not entitled to recover under the doctrine of last clear chance.
The judgment appealed from is affirmed. The costs of this appeal are assessed to plaintiff-appellant.
Affirmed.
CULPEPPER, J., concurs and assigns reasons.
DOMENGEAUX, J., dissents and assigns reasons.
CULPEPPER, Judge (concurring).
In my opinion, the motorist was free of negligence. This case falls within the jurisprudence *599 that a motorist traveling at night is not charged with the duty of guarding against striking an unexpected or unusual obstruction, which is difficult to see, and which the motorist has no reason to anticipate he will encounter in the highway, Vowell v. Manufacturers Casualty Insurance Company, 229 La. 798, 86 So.2d 909 (1956). This rule has been applied in cases where vehicles struck pedestrians, Odom v. State Farm Mutual Automobile Insurance Company, 203 So.2d 752 (La. App. 3rd Cir. 1967); Sorrell v. Allstate Insurance Company, 179 So.2d 499 (La.App. 3rd Cir. 1965); Stevenson v. Harris, 241 So.2d 46 (La.App. 3rd Cir. 1970); Comeaux v. State Farm Mutual Automobile Insurance Company, 231 So.2d 674 (La. App. 1st Cir. 1970); and Allen v. Joseph, 264 So.2d 787 (La.App. 1st Cir. 1972).
The facts admittedly show that plaintiff was dressed in dark colored clothing and that he was either down on his hands and knees, or stooped over, approximately in the middle of the street. He was attempting to cross the street at night, in the middle of the block, in violation of LSA-R.S. 32:213, which requires pedestrians not using regular crosswalks to yield the right of way to vehicles. It is difficult to imagine a stronger set of facts for the application of the rule of the Vowell case and its progeny.
I think this accident was caused solely by the gross negligence of the pedestrian as set out above.
Since I conclude the motorist was free of negligence, I do not reach the question of last clear chance.
For the reasons assigned, I concur in the decision rejecting plaintiff's demands.
DOMENGEAUX, Judge (dissenting).
I feel the majority is in error in failing to find the doctrine of "last clear chance" applicable herein.
Under the facts and circumstances of this case the majority opinion correctly determines that the defendant-driver was guilty of negligence. Mrs. Douget was driving home from church about 7:15 P.M. (during the hours of darkness) in her husband's Volkswagen Stationwagon, headlights burning, and in a residential area which was illuminated by vapor street lights to such an extent a person in or alongside the street should have been visible. Mr. Dorceneus Fruge had only minutes before the accident preceded Mrs. Douget down the same street and testified he had seen whom he thought to be the decedent, Wilson Ortego, walking along the left side of the street dressed in a dark suit and white hat. The weather was clear and there was nothing to obstruct the vision of Mrs. Douget. There were no oncoming cars. Yet Mrs. Douget testified that she only saw Ortego approximately six feet before impact, that she was driving about 25 miles per hour, and that Ortego was on "all fours" or bent over when the impact occurred. There is testimony, however, that shortly after the accident Mrs. Douget told one of the investigating officers, as well as the son of the decedent, that she did not see Ortego, but thought she had hit a hole, and backed up to see what she had struck. Thus from the evidence presented it is clear that Mrs. Douget was inattentive and failed to maintain a proper lookout on the night in question or she would have been Ortego sooner (if in fact she saw him at all before impact).
The evidence also preponderates to the effect that under the circumstances Ortego was contributorily negligent for being in or near the center of the traveled public street during the hours of darkness in front of an oncoming vehicle.
The majority also found present two of the three jurisprudential requirements necessary to invoke the last clear chance doctrine, i. e. that Mrs. Douget by the exercise of reasonable care should have discovered the decedent's peril and, had this occurred, there would have been a reasonable opportunity to avoid the accident.
*600 However, the majority opinion concludes that the third requirement is not present, i. e. that Ortego was in a position of peril of which he was unaware, or from which he was unable to extricate himself. I respectfully disagree. It cannot be disputed that Ortego was in a position of peril. Under the presumption that a person ordinarily acts in a manner not to unnecessarily expose himself to danger, I think we can assume the decedent was also unaware of his peril. In addition, testimony is to the effect that before impact the 71-year old man was for some unexplained reason on his hands and knees near the center of the road. Accordingly, I can come to no other reasonable conclusion but that Ortego was in a perilous situation from which he was unable to extricate himself. Surely he was unable to "spring sprightly out of the path of the oncoming car" as might have been the case of a much younger person found in the same or similar perilous situation.
Therefore I feel under all circumstances of this case that the requirements for the application of the last clear chance doctrine are met. Plaintiff should therefore be allowed recovery.
I respectfully dissent.